628 S.E.2d 450 (2006)
In the Matter of J.G.B., Minor Child.
No. COA05-918.
Court of Appeals of North Carolina.
May 2, 2006.
J. Edward Yeager, Jr., Charlotte, for petitioner-appellee, Mecklenburg County Department of Social Services.
Hall & Hall Attorneys at Law, P.C., by Susan P. Hall, Morganton, for respondent-appellant.
*452 McGEE, Judge.
Respondent was a dependent juvenile in foster care when she gave birth to J.G.B. on 9 May 2003. Paternity of J.G.B. was never established. J.G.B. was considered "medically fragile" because of a seizure disorder. The seizure disorder resulted in seventeen hospital visits and at least one extended hospitalization before J.G.B. was two years old. The Mecklenburg County Department of Social Services (DSS) obtained non-secure custody of J.G.B. by order entered on 13 May 2003. The petition filed by DSS does not appear in the record on appeal, so we are unable to discern the precise basis for the custody request. In its non-secure custody order, the trial court found there was a reasonable factual basis to believe that J.G.B. was "exposed to a substantial risk of physical injury or sexual abuse because the parent, guardian, or custodian ... failed to provide, or is unable to provide, adequate supervision or protection[.]" Although removed from respondent's custody, J.G.B. was placed in the same foster home with respondent. J.G.B. *453 has continued in the custody of DSS since his removal from respondent and has not at any time been returned to respondent's custody.
From the time of J.G.B.'s removal in May 2003 until respondent reached the age of eighteen years in February 2004, respondent entered into three case plans with DSS. The goal of the first case plan, dated 22 May 2003, was reunification. In this case plan, the objectives for respondent were to: (1) provide appropriate supervision and a safe environment for J.G.B., (2) learn additional parenting skills, and (3) ensure J.G.B.'s medical needs were appropriately met. The case plan noted that parenting classes for respondent were not necessary at that time, and that respondent was attending all of J.G.B.'s medical appointments.
J.G.B. was adjudicated dependent on 12 June 2003. Neither the dependency petition nor the order of adjudication appears in the record, so we cannot discern the particular allegations underlying the adjudication or whether respondent was represented by a guardian ad litem at the dependency proceeding. After the adjudication of dependency, a second DSS case plan was developed for respondent on 23 October 2003 with the continued goal of reunification. The objectives for respondent under the second case plan were to: (1) provide and maintain appropriate medical care for J.G.B. and (2) be able to support herself and J.G.B. financially. The DSS social worker noted on the case plan that while respondent attended all of J.G.B.'s medical appointments, respondent had not demonstrated an ability to save or budget her money.
At the request of respondent and her foster mother, respondent was removed from her foster home and placed into another foster home on 2 February 2004. J.G.B. remained at the original foster home. DSS and respondent entered into a Voluntary Placement Agreement (VPA) to allow respondent to stay in the second foster home past her eighteenth birthday. Respondent was approved for public housing on 5 February 2004. However, because respondent could not maintain employment, she was unable to obtain the housing for which she had been approved.
Respondent turned eighteen on 8 February 2004, and a third case plan was developed for respondent on 16 February 2004. The objectives for respondent were to: (1) maintain stable employment in order to financially care for J.G.B., (2) maintain all medical appointments for J.G.B., (3) obtain and maintain appropriate and safe housing, (4) maintain consistent, weekly visitation, and (5) learn and demonstrate appropriate parenting skills. In order to fulfill these objectives, respondent was to obtain her GED by the target date of 16 May 2004, maintain her employment at McDonald's until she found another job, and attend and participate in parenting classes, among other things.
Between March and April of 2004, respondent quit her job at McDonald's. She sold magazines door-to-door for approximately two weeks. At this time, respondent's VPA was "falling apart" because respondent was not seeking employment, going to school, attending parenting classes, or staying at the foster home, as required by the VPA. As a result, respondent's VPA was terminated on 2 April 2004, and respondent moved out of the foster home. After moving out of foster care, respondent lived with various people, including respondent's aunt, the mother of respondent's boyfriend, and respondent's mother, from whose custody respondent had previously been removed.
DSS filed a petition to terminate respondent's parental rights dated 2 June 2004. DSS alleged that grounds for terminating respondent's rights existed under two subsections of N.C. Gen.Stat. § 7B-1111(a): (1) neglect and (2) willfully leaving J.G.B. in foster care for more than twelve months without showing reasonable progress in correcting those conditions which led to the removal of J.G.B. After a hearing on 24 February 2005, the trial court determined that termination of parental rights was warranted pursuant to the two grounds alleged by DSS. The trial court then concluded that it was in J.G.B.'s best interest that respondent's parental rights be terminated. Respondent appeals.
A termination of parental rights proceeding is conducted in two phases: (1) *454 adjudication and (2) disposition. In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication phase, the petitioner has the burden of proving by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination under N.C. Gen. Stat. § 7B-1111(a) exists. Id. If a petitioner meets its burden of proving that one or more statutory grounds for termination exists, the trial court then moves to the disposition phase where it must consider if termination is in the child's best interests. Id. The standard of review of a termination of parental rights is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support its conclusions of law. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
The petition filed by DSS in this case alleged that termination of respondent's parental rights was warranted pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) and (a)(2). The pertinent portion of this statute provides:
(a) The court may terminate the parental rights upon a finding of one or more of the following:
(1) The parent has ... neglected the juvenile. The juvenile shall be deemed to be ... neglected if the court finds the juvenile to be ... a neglected juvenile within the meaning of G.S. 7B-101.
(2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.
N.C. Gen.Stat. § 7B-1111(a)(1)(2) (2005).
The trial court made the following findings of fact to support its conclusion that grounds for termination of parental rights existed under N.C.G.S. § 7B-1111(a)(1) and (a)(2):
3. [J.G.B.] was placed in [DSS] custody on May 13, 2003. [J.G.B.] was placed in [DSS] custody because his mother ... was, at the time of his birth, a minor also in [DSS] custody....
4. When [J.G.B.] was placed in [DSS] custody, he was placed in a foster home with the respondent mother. She moved on February 2, 2004 after she asked for a new foster home.
...
6. [DSS] entered into a case plan with the respondent mother in which the respondent mother agreed to: obtain and maintain stable employment; complete her GED; work with her independent living social worker; attend Well Baby and other medical appointments for [J.G.B.]; obtain and maintain appropriate housing such that she could care for [J.G.B.]; visit with [J.G.B.] on a regular basis; and also complete parenting classes.
7. The respondent mother was employed when [J.G.B.] was born. She quit that job and began selling magazines, but she maintained that employment for only about two weeks. After she quit the job selling magazines, she has not maintained additional employment.
...
10. Since leaving her foster care placement, the respondent mother has resided with the mothers of two different boyfriends. She also lived with her mother and stepfather for a period of time. It was from her mother's home that she was removed as a juvenile.
11. At the hearing of this matter, the [respondent] mother presented a lease that she had signed to obtain an apartment beginning February 24, 2005. She has not yet moved into that apartment.
12. The respondent mother also, while working with [DSS], never completed her GED.
...
14. The [respondent] mother attended many but not all of her visits and some but not all [J.G.B.]'s medical appointments. The respondent mother gave birth to another child in early February, 2005 and in fact, has missed two visits with [J.G.B.] because of having to care for her new baby.

*455 15. Although the [respondent] mother has made some progress toward her case plan goals, the amount of progress she has made is not reasonable under the circumstances and in fact, she has not completed any of her case plan goals.
16. Even the respondent mother has acknowledged at this hearing that she is not currently ready to have custody of [J.G.B.] and cannot currently care for [J.G.B.].
17. [J.G.B.] currently has special needs in the form of a seizure disorder and needs intense medical supervision on an ongoing basis.
From these findings, the trial court concluded as a matter of law that respondent: (1) neglected J.G.B. in that respondent failed to provide proper care, supervision, and discipline for J.G.B. and (2) willfully left J.G.B. in foster care for more than twelve months without showing to the satisfaction of the trial court that reasonable progress had been made in correcting those conditions that led to the removal of J.G.B.
On appeal, respondent assigns error to the trial court's determination that grounds existed to terminate her parental rights. Respondent does not except to any of the trial court's findings of fact, and they are therefore conclusive on appeal. In re Caldwell, 75 N.C.App. 299, 301, 330 S.E.2d 513, 515 (1985). We must determine solely whether the trial court's findings support its conclusions of law. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).

I.
An adjudication of neglect warranting termination of parental rights must be proved by clear, cogent, and convincing evidence that the child is a neglected juvenile as defined by N.C. Gen.Stat. § 7B-101(15). See N.C.G.S. § 7B-1111(a)(1); Blackburn, 142 N.C.App. at 610, 543 S.E.2d at 908. N.C. Gen.Stat. § 7B-101(15) (2005) defines a neglected juvenile as one who, inter alia, has not received proper care, supervision, or discipline from the juvenile's parent, or who has not been provided necessary medical care. A determination of neglect must be based on evidence showing neglect at the time of the termination proceeding. In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citing In re Ballard, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984)) (emphasis added).
Where, as in the present case, "a child has not been in the custody of a parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Pierce, 146 N.C.App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). "This is because requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id. (citing Ballard, 311 N.C. at 714, 319 S.E.2d at 231); see In re Shermer, 156 N.C.App. 281, 286, 576 S.E.2d 403, 407 (2003). "[E]vidence of neglect by a parent prior to losing custody of a child  including an adjudication of such neglect  is admissible in subsequent proceedings to terminate parental rights." Ballard, 311 N.C. at 715, 319 S.E.2d at 232. Where evidence of prior neglect is considered, a trial court must also consider evidence of changed circumstances and the probability of a repetition of neglect. Id.
In the present case, the trial court erred in concluding J.G.B. was neglected by respondent at the time of the hearing. There was no prior adjudication of neglect while J.G.B. was in respondent's custody. There was a prior adjudication of dependency, but respondent had already lost custody of J.G.B. prior to the dependency adjudication. Therefore, there was no evidence before the trial court that respondent had neglected J.G.B. while J.G.B. was in her custody. While the trial court found that respondent failed to attend all of J.G.B.'s medical visits, respondent did not have custody of J.G.B. at that time. Without evidence of any prior neglect while respondent had custody of J.G.B., petitioner has failed to show neglect at the time of the hearing. For this reason, in view of Ballard and its progeny, we hold that the trial court erred in concluding *456 grounds existed under N.C.G.S. § 7B-1111(a)(1) to terminate respondent's parental rights.

II.
Our Court recently clarified that, to find grounds to terminate parental rights under N.C.G.S. § 7B-1111(a)(2), a trial court must perform a two-part analysis. In re O.C., 171 N.C.App. 457, 464, 615 S.E.2d 391, 396, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005).
The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.
Id. (emphasis added). In this two-part analysis, "[e]vidence and findings which support a determination of `reasonable progress' may parallel or differ from that which supports the determination of `willfulness' in leaving the child in placement outside the home" for the statutory twelve-month period. Id. Under N.C.G.S. § 7B-1111(a)(2), the twelve-month period begins when a child is left in foster care or placement outside the home pursuant to a court order, and ends when the motion or petition for termination of parental rights is filed. In re A.C.F., ___ N.C.App. ___, ___, 626 S.E.2d 729, 734 (2006). Where the twelve-month threshold does not expire before the motion or petition is filed, a termination on the basis of N.C.G.S. § 7B-1111(a)(2) cannot be sustained. Id. at ___, 626 S.E.2d at 735.
Respondent contends that since she was a minor for eight of the twelve months prior to the filing of the termination petition, she lacked the necessary capacity to have willfully left J.G.B. in foster care for the statutory twelve-month period. Citing In re Matherly, 149 N.C.App. 452, 562 S.E.2d 15 (2002), respondent argues that evidence showing respondent's "ability, or capacity to acquire the ability, to overcome factors which resulted in [J.G.B.] being placed in foster care must be apparent for willfulness to attach." Matherly, 149 N.C.App. at 455, 562 S.E.2d at 18.
In Matherly, the trial court's order terminating parental rights did not adequately address the minor parent's willfulness under N.C.G.S. § 7B-1111(a)(2), and our Court remanded. Id. The facts of Matherly were that a child was removed from the mother's custody when the mother was fifteen years old. Id. at 452, 562 S.E.2d at 16. When the mother turned sixteen, she began working with DSS in an effort to reunify with the child. Id. at 453, 562 S.E.2d at 16. The mother's objectives for reunification included establishing her own residence. Id. at 455, 562 S.E.2d at 18. A petition to terminate the mother's parental rights was filed when the mother was seventeen years old. Id. at 454-55, 562 S.E.2d at 17. On appeal, this Court found the trial court's findings inadequate as to the mother's willful leaving of the child in foster care, in part because there was no finding that the mother was legally competent to establish her own residence. Id. at 455, 562 S.E.2d at 18. On remand, the trial court was instructed to "make specific findings of fact showing that a minor parent's age-related limitations as to willfulness have been adequately considered." Id.
In the present case, respondent was a seventeen-year-old unemancipated minor when J.G.B. was placed in DSS custody. Respondent was herself in DSS custody, living in foster care, and J.G.B. was placed in the same foster home as respondent. J.G.B. lived in the same foster home with respondent until 2 February 2004, when respondent moved to another foster home. Four months later, on 2 June 2004, DSS filed a petition to terminate respondent's parental rights. On the date the petition was filed, respondent had been eighteen years old for just under four months, and had been physically separated from J.G.B. for just under four months.
In light of Matherly, we find that the trial court failed to adequately address respondent's age, in terms of whether respondent willfully left J.G.B. in foster care for twelve months prior to the filing of the *457 petition. Where, as here, the parent is an unemancipated minor, herself in the custody of DSS, the trial court must make specific findings of the parent's "ability, or capacity to acquire the ability, to overcome factors which resulted in [the child] being placed in foster care[.]" Id. We cannot agree with the trial court's determination that, under the facts of the present case, respondent's living in the same foster home as her child necessarily constituted willfully leaving the child in foster care. Accordingly, we remand to the trial court for sufficient findings as to respondent's willful leaving of J.G.B. in foster care for the statutory twelve-month period, given respondent's age.
Although we remand to the trial court for findings as to respondent's willful leaving of J.G.B. in foster care, we will address respondent's next argument, which deals with the second step of the N.C.G.S. § 7B-1111(a)(2) analysis, whether respondent has shown reasonable progress. Respondent argues the trial court erred in terminating her parental rights because DSS failed to provide respondent with adequate services upon respondent's reaching the age of majority. Respondent argues the two-month period DSS worked with respondent between her eighteenth birthday and DSS's filing of the petition for termination was a "woefully inadequate amount of time." Respondent's argument is without merit.
Respondent's argument mistakenly relies only on the two-month period between her eighteenth birthday and the date of the filing of the petition for termination. Evidence supporting a determination of reasonable progress under N.C.G.S. § 7B-1111(a)(2) "is not limited to that which falls during the twelve month period next preceding the filing of the motion or petition to terminate parental rights." In re O.C., 171 N.C.App. at 465, 615 S.E.2d at 396. Rather, a trial court may consider evidence of reasonable progress made by a respondent until the date of the termination hearing. See In re Pierce, 356 N.C. 68, 75 n. 1, 565 S.E.2d 81, 86 n. 1 (2002) (noting that, given a 2001 amendment to our juvenile code, "[t]here is no specified time frame that limits the admission of relevant evidence pertaining to a parent's `reasonable progress' or lack thereof."). In this case, respondent reached the age of majority more than a year before the termination hearing. The trial court properly considered evidence of respondent's progress up until the time of the hearing. Therefore, respondent's emphasis on the period between her eighteenth birthday and the date DSS filed the termination petition is misplaced. We find the trial court did not err in concluding that respondent failed to make reasonable progress under the circumstances.
Respondent further argues that because she was a minor when she entered into the first two case plans with DSS, and DSS was standing in loco parentis of respondent, DSS was responsible for respondent's lack of compliance with her case plans. We do not agree. Minor parents may be held responsible for caring for their children, and the failure to do so may result in a termination of their parental rights. See N.C. Gen.Stat. § 7B-1101.1 (2005) (providing for the appointment of a guardian ad litem when a parent is under eighteen years old). The intent of the General Assembly to provide for the termination of parental rights of minor parents is evidenced by the 2005 amendment of N.C. Gen.Stat. § 7B-1101 to provide that "[t]he court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent." N.C. Gen.Stat. § 7B-1101 (2005). Moreover, as discussed above, the trial court was permitted to consider evidence of respondent's reasonable progress since her eighteenth birthday, when DSS no longer stood in loco parentis of respondent.
Reversed in part; remanded in part.
Judges CALABRIA and GEER concur.