IN THE MATTER OF: M.T.
No. COA08-1183
Court of Appeals of North Carolina.
Filed March 3, 2009
This case not for publication
Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.
Smith James Rowlett & Cohen, LLP, by Margaret Rowlett, for appellee Guardian ad Litem.
Janet K. Ledbetter for respondent-appellant mother.
ROBERT C. HUNTER, Judge.
Respondent-mother appeals an order terminating her parental rights in M.T. For the following reasons, we remand.
Respondent was born in Liberia, Africa and immigrated with her family to the United States. Respondent lived with her mother, step-father, and four siblings in Guilford County. In February 2006, respondent, at the age of sixteen years, gave birth to M.T. On 12 April 2006, the Guilford County Department of Social Services ("DSS") filed a petition alleging that M.T. was neglected and dependent. The petition alleged that respondent's step-father was the father of M.T.; that there were reports of domestic violence between respondent and her step-father; that the step-father had refused to remain away from the home; and that respondent had been involved in a physical altercation with another girl in the neighborhood resulting in M.T. being dropped. DSS took non-secure custody of M.T. DSS also placed respondent in foster care from April 2006 to August 2006 based upon the allegations of sexual abuse by the step-father.
On 28 November 2006, respondent entered into a case plan for reunification. The case plan required respondent to: Cooperate with individual and family counseling; attend high school; obtain a diploma or GED; submit to unannounced and announced visits; adhere to a visitation plan; refrain from arguing and fighting with her mother in the home; refrain from having contact with her step-father; meet the psychological and medical needs of M.T.; and provide stable housing for M.T. Because of respondent's age, respondent's mother also signed the case plan. DSS provided respondent with services and referrals, including North Carolina African Services, Greensboro Housing Authority and Family Services of the Piedmont. By order filed 19 December 2006, the trial court adjudicated M.T. a dependent juvenile. The trial court found that respondent "consents to an adjudication of dependency, based on allegations in the petition, concerns for the mother's inability to care for the child due to her immaturity, anger problems, and her possible mental health concerns."
The trial court held a review hearing on 9 March 2007. By order filed 19 March 2007, the court found that respondent had been residing in her mother's home; that there was fighting between the respondent and her mother; and that the home is "not . . . suitable. . . for the teenage mother [or M.T.]" The court further found that while respondent had visited M.T. on a fairly consistent basis, respondent was not currently enrolled in school and had refused to attend a parenting assessment. The trial court also found that "[t]here is a reasonable question about the age of [the mother]. Her documentation from her refugee camp indicates that she is 17, and she says she is 17; she appears to be much younger than 17, her immaturity suggests that she is much younger than 17." The trial court ordered legal and physical custody of M.T. to remain with DSS. The court also ordered DSS to discuss with respondent's mother a voluntary placement of respondent or to file a juvenile petition "bringing [respondent] back into care."
Another review hearing was held on 1 June 2007. By order filed 7 July 2007, the trial court found that DSS had filed a dependency petition as to respondent; that respondent was in DSS's care from 9 March 2007 until 5 May 2007 when she was placed back with her mother; and that while in DSS's care, respondent ran away from her placement. The trial court further found that respondent was not cooperating with counseling; was not attending school; continued to verbally attack her mother; was suspected of seeing her step-father; and had attended only one of the two appointments for her psychological evaluation and parenting assessment. The trial court also found that DSS had attempted to determine respondent's age as "[s]he appears to be younger than her stated age." The trial court continued legal and physical custody of M.T. with DSS. In another review order filed 19 December 2007, the trial court found that respondent went to Texas in July of 2007; that respondent turned eighteen years of age on 24 August 2007; that respondent had not complied with her case plan other than with keeping contact with DSS; and that paternity of M.T. had not been established.
On 8 January 2008, DSS filed a petition to terminate parental rights of respondent on the grounds that she neglected M.T. under N.C. Gen. Stat. § 7B-1111(a)(1) and that she willfully left M.T. in foster care without showing reasonable progress under the circumstances under N.C. Gen. Stat. § 7B-1111(a)(2). Respondent's counsel moved to have a guardian ad litem appointed for respondent. After noting that "there are well-founded questions as to the maturity and . . . chronological age" as well as respondent's "experiences in connection with the civil war in Liberia and in refugee camps which may have compromised her ability to function here[,]" the trial court appointed a guardian ad litem for respondent. The trial court held a hearing on the termination petition and concluded that respondent had willfully left M.T. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress had been made in correcting the conditions which led to the removal of M.T. The trial court further concluded that it was in the best interest of M.T. to terminate respondent's parental rights. Respondent appeals. Respondent essentially contends the trial court erred by finding and concluding that sufficient grounds existed to terminate her parental rights.
A termination of parental rights proceeding is conducted in two phases: (1) an adjudication phase that is governed by N.C. Gen. Stat. § 7B-1109 (2007) and (2) a disposition phase that is governed by N.C. Gen. Stat. § 7B-1110 (2007). See In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (2004). During the initial adjudication stage, petitioner has the burden of proving by clear, cogent, and convincing evidence the existence of one or more of the statutory grounds for termination set forth in N.C. Gen. Stat. § 7B-1111. Id. The standard of appellate review is "whether the [trial] court's `findings of fact are based upon clear, cogent and convincing evidence' and whether the `findings support the conclusions of law.'" In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000) (quoting In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996)). If DSS meets its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a); In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003). The trial court may then terminate parental rights upon a finding that it would be in the best interests of the child to do so. Id. at 285, 576 S.E.2d at 406-07.
Under N.C. Gen. Stat. § 7B-1111(a)(2), a court may terminate parental rights upon a finding that: The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty. N.C. Gen. Stat. § 7B-1111(a)(2) (2007). "Willfulness" under N.C. Gen. Stat. § 7B-1111(a) "means something less than willful abandonment[,]" and "does not require a showing of fault by the parent." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Willfulness may be found where a parent has made some attempt to regain custody of the child but has left the child in foster care for over twelve months and has failed to exhibit "reasonable progress or a positive response toward the diligent efforts of DSS." Id. at 440, 473 S.E.2d at 398. "A parent's `willfulness' in leaving a child in foster care may be established by evidence that the parents possessed the ability to make reasonable progress, but were unwilling to make an effort." In re Baker, 158 N.C. App. 491, 494, 581 S.E.2d 144, 146 (2003).
To support its determination that respondent willfully left M.T. in foster care, the trial court made, in pertinent part, the following findings of fact:
9. The court finds that the juvenile is currently in the legal and physical custody of the Guilford County Department of Social Services, and the Juvenile has been in the legal and physical custody of the Guilford County Department of Social Services since October 12, 2006.
. . .
11. The juvenile was adjudicated Neglected and Dependent by consent of the mother in an Adjudicatory and Dispositional Hearing held on November 29, 2006.
12. The circumstances that brought the juvenile into DSS custody were domestic violence issues between the mother, maternal grandmother, and the maternal grandmother's husband.
13. The mother was seventeen years old at the time of the birth of the juvenile, and the mother did not have stable housing.
14. The mother entered into a case plan to reunify with the juvenile on November 28, 2006.
15. The mother was not compliant with the objectives in her case plan to obtain her high school diploma or her G.E.D., to obtain housing and/or employment, and to refrain from arguing with her mother, the juveniles maternal grandmother.
16. Although the mother was compliant with her scheduled visitation with the juvenile, she never sought an increase in the frequency or amount of her visitation.
17. The mother repeatedly expressed to the DSS Social Worker that she was not seeking reunification with the juvenile. She expressed the desire for the maternal grandmother to raise the juvenile.
18. The juvenile has been in DSS custody for over 12 months, and the mother has not made reasonable progress under the circumstances toward alleviating the conditions that brought the juvenile into DSS custody.
Respondent challenges many of the above findings of fact. With two exceptions, we conclude that the above findings of fact are supported by the testimony of DSS social worker and prior court orders. First, finding of fact 11 incorrectly states that M.T. was adjudicated both neglected and dependent when M.T. was only adjudicated dependent. Also, finding of fact 13 incorrectly states that respondent was seventeen years old at the time of M.T.'s birth when respondent was in fact sixteen years old, which leads us to respondent's main argument. Respondent argues that the trial court failed to make appropriate findings regarding her age, in terms of whether she willfully left M.T. in foster care for twelve months prior to the filing of the petitions. Respondent cites In re Matherly, 149 N.C. App. 452, 562 S.E.2d 15 (2002), and In re J.G.B., 177 N.C. App. 375, 628 S.E.2d 450 (2006), to support her contention. We agree.
In In re Matherly, the child was removed from the mother's custody when the mother was fifteen years old. Matherly, 149 N.C. App. at 452-53, 562 S.E.2d at 16. On appeal, this Court held that the trial court's order terminating parental rights did not adequately address the minor parent's willfulness under N.C. Gen. Stat. § 7B-1111(a)(2), and our Court remanded to "make specific findings of fact showing that a minor parent's age-related limitations as to willfulness have been adequately considered." Id. at 455, 562 S.E.2d at 18. The facts of In re J.G.B. were that a child was removed from the mother's custody when the mother was seventeen years old and was herself in DSS custody. J.G.B., 177 N.C. App. at 384, 628 S.E.2d at 456. A petition to terminate the mother's parental rights was filed when the mother had been eighteen years of age for almost four months and the juvenile had been physically separated from his mother for the same period of time. Id. Applying the reasoning of Matherly to the facts of J.G.B., this Court found the trial court's findings inadequate as to the minor mother's willful leaving of the child in foster care and remanded "to the trial court for sufficient findings as to [the mother's] willful leaving of J.G.B. in foster care for the statutory twelve-month period, given [the mother's] age." Id. at 384, 628 S.E.2d at 457.
We find the reasoning of Matherly and J.G.B. controlling. Like the mother in J.G.B., respondent was not an emancipated minor when her baby was placed in DSS custody, and she was eighteen years of age when the termination petition was filed. In fact, because respondent was a minor, respondent's mother had to sign the case plan. Further, respondent herself was twice in the custody of DSS based on dependency. More importantly, throughout DSS's involvement with respondent and M.T., there was concern about respondent's age and maturity. The trial court made findings in its adjudication and review orders regarding respondent's lack of maturity for her age, and ultimately appointed a guardian ad litem for respondent due to "questions as to the maturity and . . . chronological age of [respondent]." The termination order, however, is void of any findings which illustrate that the mother's age-related limitations were sufficiently considered.
DSS claims that finding of fact 17 demonstrates respondent's willingness to relinquish her parental rights. Finding 17 states: "The mother repeatedly expressed to the DSS Social Worker that she was not seeking reunification with the juvenile. She expressed the desire for the maternal grandmother to raise the juvenile." We disagree with DSS's assertion as respondent's expressed desire for her mother to raise the juvenile does not manifest a willful relinquishment of her parental rights. Therefore, we find that the trial court erred in basing its subsequent termination of respondent's parental rights on this finding of fact.
We conclude the trial court failed to make adequate findings regarding respondent mother's "'ability, or capacity to acquire the ability, to overcome factors which resulted in [M.T.] being placed in foster care[.]'" J.G.B., 177 N.C. App. at 384, 628 S.E.2d at 457 (quoting In re Matherly, 149 N.C. App. at 455, 562 S.E.2d at 18) (second alteration in original). Accordingly, we remand for further findings.
Remanded.
Judges BRYANT and CALABRIA concur.
Report per Rule 30(e).