CALABRIA, Judge.
*53 Respondent-appellant ("father") of the juvenile M.A.W. ("Mary")[1] APPEALS FROM AN ORDEr terminating his parental rights. we reverse.
On 11 March 2013, New Hanover County Department of Social Services ("DSS") filed a petition alleging that Mary was a neglected juvenile. DSS alleged that Mary's mother ("L.W.") "has a history of substance abuse and mental health issues, which has previously interfered with her ability to provide appropriate care for her children." On 19 February *462 2013, L.W. tested positive for Percocet, a narcotic for which she did not have a prescription. Additionally, two social workers who were present for her drug screen detected the odor of alcohol emanating from L.W. At the time the petition was filed, father was incarcerated. Accordingly, DSS claimed that Mary, who was less than two months old, was living in an environment injurious to her welfare and did not have the ability to protect or provide for herself. DSS obtained non-secure custody of Mary. On 5 July 2013, the trial court adjudicated Mary neglected and dependent based upon the parties' stipulations to the allegations in the petition.
The trial court held a permanency planning review hearing on 10 April 2014. The trial court ceased further reunification efforts between Mary and L.W., and L.W. executed a consent for adoption. The trial court determined that the permanent plan for Mary should be reunification with father. The court noted, however, that father was still incarcerated, had a "drinking problem," and that "[h]is continued sobriety is paramount to any plan of reunification."
On 4 September 2014, the trial court held another permanency planning review hearing. The court found that father had been released from incarceration. The court noted that, during his incarceration, father had "completed a parenting education class, regularly attended Alcoholic Anonymous meetings and worked towards obtaining his GED." The court found that DSS should continue to make reasonable efforts towards a permanent plan of reunifying Mary with father. At a subsequent permanency planning review hearing, however, the trial court expressed disapproval regarding father's efforts at reunification. Accordingly, the trial court ceased reunification efforts and changed Mary's permanent plan for Mary to adoption.
On 10 February 2015, DSS filed a petition to terminate father's parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) (neglect) and *54 (5) (failure to legitimate). On 12 August 2015, the trial court terminated father's parental rights on the ground of neglect. Father appeals.
Father argues that the trial court erred by concluding that grounds existed to terminate his parental rights. We agree.
Section 7B-1111 sets out the statutory grounds for terminating parental rights. "A finding of any one of the grounds enumerated therein, if supported by competent evidence, is sufficient to support a termination." In re J.L.K., 165 N.C.App. 311, 317, 598 S.E.2d 387, 391. "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., 171 N.C.App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000) ).
In the instant case, the trial court concluded that grounds existed to terminate father's parental rights based on neglect. N.C. Gen.Stat. § 7B-1111(a)(1) (2015). A "Neglected juvenile" is defined as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15) (2015). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.' " In re L.O.K., 174 N.C.App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ). When, however, as here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, 'requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible.' " Id. (quoting In re Shermer, 156 N.C.App. 281, 286, 576 S.E.2d 403, 407 (2003) ). "In those circumstances, a trial *463 court may find that grounds for termination exist upon a showing of a 'history of neglect by the parent and the probability of a repetition of neglect.' " Id.
In this case, while there was a prior adjudication of neglect, the party responsible for the neglect was the juvenile's mother, not father.
*55 At the time the petition was filed, father was incarcerated, and the trial court noted that father "was the non-offending parent at the time of [the juvenile's] removal." Therefore, there was no evidence before the trial court, and no findings of fact, that father had previously neglected Mary. Without evidence of any prior neglect, petitioner failed to show neglect at the time of the hearing. In re J.G.B., 177 N.C.App. 375, 382, 628 S.E.2d 450, 455 (2006). Furthermore, the evidence, as well as the trial court's findings, do not support a conclusion that there was ongoing neglect at the time of the termination hearing. Accordingly, we hold that the trial court erred in concluding grounds existed under N.C. Gen.Stat. § 7B-1111(a)(1) to terminate father's parental rights and reverse the order entered.
REVERSED.
Judges DILLON and INMAN concur.

A pseudonym is used to protect the juvenile's identity and for ease of reading.