IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-479

Filed 21 November 2023

Randolph County, No. 21 JT 166

In re: A.N.R.

Appeal by Respondent from order entered 7 February 2023 by Judge Sarah N. Lanier in Randolph County District Court. Heard in the Court of Appeals 1 November 2023.

> *Chrystal Kay for Petitioner-Appellee Randolph County Department of Social Services.*
>
> *Stephen M. Schoeberle for Appellee Guardian ad Litem.*
>
> *Mercedes O. Chut for Respondent-Appellant Mother.*

COLLINS, Judge.

Respondent-Mother ("Mother") appeals from an order terminating her parental rights to her daughter, Amy.[1] Mother argues that the trial court erred by concluding that she (1) neglected Amy and (2) willfully left Amy in placement outside of the home for more than 12 months and failed to show that reasonable progress had been made in correcting the conditions which led to Amy's removal. Because the trial court's findings are supported by the record evidence, and those findings support the

---

[1] We use a pseudonym to protect the identity of the minor child. *See* N.C. R. App. P. 42.

trial court's conclusion that Mother willfully left Amy in placement outside of the home for more than 12 months without making reasonable progress, we affirm.

## I.    Background

Amy was born in July 2008.  In March 2011, Mother and Amy's biological father[2] entered a voluntary "Custody Consent Order," granting temporary custody of Amy to Amy's maternal grandfather, Jeff, and maternal step-grandmother, Connie.[3] The custody order gave Mother and Amy's biological father "liberal visitation as the parties can agree."  Jeff and Connie retained custody of Amy for more than 10 years, during which time Mother visited Amy sporadically.  On 3 September 2021, Randolph County Department of Social Services ("DSS") filed a petition alleging that Amy was a dependent juvenile because: Jeff was unable to care for Amy; Connie was "unable to care for" Amy or "have [Amy] in her home" because of Connie's substance abuse issues; and Amy's mental health problems were not being successfully managed.  The petition further alleged that Mother was incarcerated for possession of methamphetamine and drug paraphernalia as of the time of the filing and that Mother had inappropriate contact with Amy.  The trial court placed Amy in the nonsecure custody of DSS that same day.  Sometime after that 3 September hearing, Mother was released from incarceration and attended a hearing in September 2021

---

[2] Amy's biological father is not a party to this appeal.
[3] We use pseudonyms for Amy's maternal grandfather and maternal step-grandmother to protect Amy's identity.

to address visitation with Amy; the trial court awarded Mother DSS-supervised visits with Amy for one hour, every other week.

The matter came on for hearing on 18 November 2021, and Mother, Jeff, and Connie stipulated to the trial court that: Jeff and Connie were no longer willing to be Amy's caregivers; "Mother was incarcerated and did not have safe and stable housing or income sufficient to support [Amy]"; and Mother "has a history of substance abuse issues[.]" The trial court adjudicated Amy dependent because her "parents, custodians, and caretaker are unable to provide for her placement and care and lack an appropriate, alternative childcare arrangement[.]" The trial court then moved to the dispositional phase of the hearing, concluding that Amy should remain in the secure custody of DSS and ordering Mother to complete a series of services and activities in order to reunify with Amy. The trial court ordered Mother to: (1) complete a substance abuse assessment and follow any and all recommendations from DSS; (2) complete random drug screens at the request of DSS, on the day and time requested by DSS; (3) complete parenting classes and demonstrate skills learned; (4) obtain and maintain stable and appropriate housing; (5) obtain and maintain legal, verifiable income sufficient to meet Amy's needs; (6) participate in Amy's therapy if or when deemed appropriate by Amy's therapist; (7) sign release forms; and (8) contact DSS within two days of any change to Mother's phone number, mailing address, or place where Mother stayed. The trial court maintained Mother's DSS-supervised visitations with Amy. Mother was incarcerated on 28 December

2021 and remained in jail through March 2022.

From April 2022 through 27 September 2022, during which time Mother was not incarcerated, Mother had approximately eight in-person visits with Amy that were not supervised by DSS. Mother failed to appear for any in-person visits supervised by DSS and located at the agency. Instead, Mother would meet Amy and Amy's foster mother at a shopping center or at a restaurant. During this same time period, Mother also failed to: obtain a substance abuse assessment and engage in substance abuse treatment; obtain and maintain stable housing; and obtain and maintain legal, verifiable income. Mother was incarcerated again on 28 September 2022 and remained in jail until 8 January 2023.

DSS filed a motion to terminate Mother's parental rights on 17 October 2022. The matter came on for hearing on 4 January 2023 and, by order entered 7 February 2023, the trial court terminated Mother's parental rights to Amy under N.C. Gen. Stat. § 7B-1111(a)(1), neglect, and N.C. Gen. Stat. § 7B-1111(a)(2), willfully leaving the juvenile in placement outside of the home for more than 12 months and failing to show that reasonable progress had been made in correcting the conditions which led to removal of the juvenile.

The trial court found and concluded that it was in Amy's best interests to terminate Mother's parental rights. Mother gave timely notice of appeal on 6 March 2023.

## II. Discussion

Mother argues that the trial court erred in terminating her parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), neglect, and N.C. Gen. Stat. § 7B-1111(a)(2), willfully leaving the juvenile in placement outside of the home for more than 12 months and failing to show that reasonable progress had been made in correcting the conditions which led to removal of the juvenile, because certain findings of fact are unsupported by clear, cogent, and convincing evidence.

## A. Standard of Review

A termination-of-parental-rights proceeding is a two-step process. *In re D.A.H.-C.*, 227 N.C. App. 489, 493, 742 S.E.2d 836, 839 (2013). "At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5-6, 832 S.E.2d 698, 700 (2019) (quotation marks and citation omitted). If the petitioner meets its evidentiary burden with respect to a statutory ground and the trial court concludes that the parent's rights may be terminated, then the matter proceeds to the disposition phase, at which the trial court determines whether termination is in the best interests of the child. *In re T.D.P.*, 164 N.C. App. 287, 288, 595 S.E.2d 735, 736-37 (2004). If, in its discretion, the trial court determines that it is in the child's best interests, the trial court may then terminate the parent's rights. *In re Howell*, 161 N.C. App. 650, 656, 589 S.E.2d 157, 161 (2003).

Pursuant to N.C. Gen. Stat. § 7B-1111(a), a trial court may terminate parental

rights upon a finding of one of eleven enumerated grounds. When reviewing the trial court's adjudication of grounds for termination, we examine whether the trial court's findings of fact "are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quotation marks and citations omitted). Any unchallenged findings are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citations omitted). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

## B. Adjudication

### 1. N.C. Gen. Stat. § 7B-1111(a)(2) – Lack of Progress

When a trial court terminates parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), the trial court must determine that, as of the time of the hearing, the juvenile has been willfully left in placement outside of the home for more than 12 months and that the parent has not made "reasonable progress under the circumstances to correct the conditions which led to removal of the child." *In re O.C.*, 171 N.C. App. 457, 465, 615 S.E.2d 391, 396 (2005). The trial court may consider evidence of reasonable progress made by a parent "until the date of the termination hearing." *In re J.G.B.*, 177 N.C. App. 375, 385, 628 S.E.2d 450, 457 (2006) (citation omitted). A parent's "prolonged inability to improve [their] situation, despite some efforts in that direction, will support a finding of willfulness regardless of [their] good

intentions[.]" *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004) (quotation marks and citation omitted). Our Courts consider the circumstance of a parent's incarceration in determining whether a parent has made reasonable progress and have made it clear that "incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights" proceeding. *In re M.A.W.*, 370 N.C. 149, 153, 804 S.E.2d 513, 517 (2017) (brackets and citations omitted).

Here, the trial court's unchallenged findings of fact show that Amy was placed into DSS custody on 3 September 2021 and DSS filed a motion to terminate Mother's parental rights on 17 October 2022. This satisfies the first prong of N.C. Gen. Stat. § 7B-1111(a)(2), that Amy was willfully left in a placement outside of the home for more than 12 months before DSS filed its motion to terminate Mother's parental rights.

Relevant to the second prong of N.C. Gen. Stat. § 7B-1111(a)(2), Mother challenges the following findings as being unsupported by clear, cogent, and convincing evidence:

*a. Finding 23*

Finding 23 states, "Since the minor child has not been in the Mother's custody, the Mother has not consistently visited the minor child." The record evidence shows that Mother "has had sporadic contact as far as visitation" with Amy; that Mother did not appear for any DSS-supervised visits with Amy at the agency; and that Mother attended, at most, eight unsupervised visits with Amy for the entire time that

Amy was in DSS custody. This clear, cogent, and convincing record evidence supports Finding 23.

b. *Finding 24*

Finding 24 states, "The Mother has a history of substance abuse issues that has prevented her from being able to provide proper care to the minor child." Here, Mother stipulated at the adjudication hearing that she "has a history of substance abuse issue[s]" and "at the filing of the petition she was incarcerated for pending charges of possession of methamphetamines and possession of drug paraphernalia." Mother further stipulated that Amy needed placement or assistance because Mother was "unable to provide for [Amy's] placement and care and lack[ed] an appropriate, alternative arrangement[.]" Moreover, the record contains a certified criminal record for Mother, showing that Mother has had multiple convictions for possession of drugs and drug paraphernalia from 2016 through 2021. The record further shows that Mother had sporadic contact with Amy for the 10-year period from 2011 until the filing of the petition in September 2021. Finding 24 is supported by clear, cogent, and convincing record evidence.

c. *Finding 25*

Finding 25 states, "At the time of the filing of the petition by [DSS] the Mother did not have safe and stable housing." Mother admits that she was in jail at the time of the filing of the petition and concedes that jail is not suitable, appropriate housing for a child. The clear, cogent, and convincing record evidence shows that Mother was

incarcerated on the date that DSS filed its petition and supports Finding 25. Mother argues that "[t]his finding is misleading" because "the record contains no evidence of [Mother's] housing prior to that incarceration." We disagree that the finding is misleading and instead understand the finding as clearly stating Mother's housing situation "[a]t the time of the filing of the petition" when she was incarcerated. Furthermore, unchallenged Finding 39 states in relevant part, "When the Mother was not incarcerated, she never provided verification through a lease and allowing [DSS] to assess[] her home to verify that she has safe and stable housing." Finding 25 is supported by clear, cogent, and convincing record evidence.

### d. *Finding 30*

Finding 30 states, "The Mother was incarcerated from December 28, 2021 through March 2022 and again from October 10, 2022 through January 8, 2023." Mother argues that the evidence does not support that she was incarcerated "through March 2022" and "from October 10, 2022." Mother testified that she was released from jail in April 2022, which supports that Mother was incarcerated "through March 2022." Mother also testified that she was in jail on 10 October 2022 and visited with a DSS social worker while incarcerated on that date; this testimony supports that Mother was incarcerated from at least 10 October 2022. There is clear, cogent, and convincing record evidence to support Finding 30.

### e. *Finding 31*

Finding 31 states, "The Mother's certified criminal records indicates [sic] her

current charges are Possession of Schedule I Controlled Substance, Possession with Intent to Distribute Schedule I, and Possession of Schedule II Controlled Substance." Mother argues, and we agree, that her certified criminal record shows that Mother's only pending charges at the time of the hearing were for driving while license revoked, not impaired; expired registration; and "expired/no inspection." While Mother's criminal record shows past convictions for other drug-related offenses, there is no evidence to support the pending charges listed in Finding 31. We strike and omit Finding 31 from consideration.

### f. *Findings 33, 34, 35*

Finding 33 states, "[DSS] requested a drug screen from the Mother on June 9, 2021; she failed to show." Finding 34 states, "[DSS] requested a drug screen from the Mother on October 21, 2021; she failed to show." Mother admits that DSS requested drug screens on those dates and that Mother "did not take them." Mother does not argue on appeal that this finding is unsupported by record evidence, but instead sets forth an explanation for her failure to show for the drug screens. However, the clear, cogent, and convincing record evidence shows that DSS requested, and Mother failed to show for, two drug screens. Finding 35 states, "The Mother has not demonstrated she can be a sober caregiver." This finding is supported by record evidence that shows that DSS requested two drug screens and Mother failed to take either drug screen, which could have demonstrated her commitment to sobriety. Finding 35 is also supported by record evidence showing that Mother failed to obtain a substance abuse

assessment or engage in approved substance abuse treatment, which further could have demonstrated her commitment to sobriety.

g. *Finding 36*

Finding 36 states, "The Mother was ordered to complete parenting classes. The Mother participated in parenting modules offered while incarcerated, but the Mother never participated in a [DSS] approved parenting class to demonstrate her parenting skills." Two social workers with DSS testified that Mother completed parenting classes on a tablet while she was incarcerated and that Mother presented to DSS a transcript showing her completion of the parenting classes. However, Mother also testified and admitted on cross-examination that she had other people complete some of the parenting classes on her tablet.

Mother testified that there were four people in her cell, they did "some of the courses," and all of the course credits were listed under her name despite others taking the classes. One of the DSS social workers testified that Mother never disclosed that other people had completed the parenting classes under Mother's name and that Mother did not mention this when she presented the transcript to DSS for credit. As it is the responsibility of the trial court to weigh testimony, pass upon the credibility of witnesses, and draw reasonable inferences from the evidence, *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167-68 (2016), we determine that clear, cogent, and convincing evidence supports the finding that Mother "never participated in a [DSS] approved parenting class to demonstrate her parenting skills."

Aside from Finding 31, clear, cogent, and convincing evidence supports the challenged findings of fact. In addition to the challenged findings, the trial court also made the following unchallenged, and thus binding, findings of fact:

> 32. The Mother indicated she completed substance abuse classes while incarcerated but there were no means to have her progress monitored. The Mother failed to complete a substance abuse assessment.
>
> . . . .
>
> 37. The Mother reported she was living at Holder Inman Road, Randleman, North Carolina. A home visit was scheduled on June 20, 2022. The Mother contacted [DSS] that morning stating she was running a fever and she was going to the emergency room. The Mother stated she would reach out to [DSS] to reschedule a home visit.
>
> 38. On July 25, 2022, [DSS] contacted the Mother to get an update. The Mother failed to provide a time for a home visit.
>
> 39. Throughout the time the minor child has been in [DSS] custody the Mother has been in and out of incarceration. The Mother is currently incarcerated. When the Mother was not incarcerated she never provided verification through a lease and allowing [DSS] to assess[] her home to verify that she has safe and stable housing.
>
> 40. The Mother reported she would begin working for Hendrix Batting April 28, 2022, but she failed to provide proof of income.
>
> 41. The Mother reported she began working at Everhart Enterprises in August 2022, but the Mother failed to notify or provide proof of income to [DSS].
>
> 42. The Mother is currently incarcerated and does not have a source of income.
>
> 43. Since the minor child has come into [DSS] custody, the Mother has failed to provide any proof of income.
>
> 44. The Mother failed to provide verification of income

*Opinion of the Court*

demonstrating her ability to support the minor child.

The supported findings of fact show that Mother: failed to obtain a substance abuse assessment or any treatment; failed to show for at least two required drug screens ordered by DSS; failed to complete parenting classes and demonstrate skills learned; failed to obtain and maintain stable and appropriate housing; and failed to obtain and maintain legal, verifiable income.

While Mother could not do some of these things while incarcerated, Mother was not incarcerated for the entirety of this matter. Mother was out of jail for a period of at least five months, spanning April 2022 through September 2022; during that time, Mother was going back and forth between two residences in Randolph County. At the time of the termination hearing in January 2023, Mother testified that she planned to move in with her employer, which would have been her third residence in a span of less than nine months. This evidence further supports that Mother failed to obtain and maintain stable and appropriate housing, even when she was not incarcerated. The record evidence shows that Mother failed to correct the conditions which led to Amy's placement in custody with DSS.

The trial court thus properly found that Amy was willfully left in placement outside of the home for more than 12 months and concluded that grounds existed to terminate Mother's rights under N.C. Gen. Stat. § 7B-1111(a)(2). "Because a finding of only one ground is necessary to support a termination of parental rights," we need not address Mother's remaining argument regarding the remaining ground of

- 13 -

neglect. *In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019) (citation omitted).

## III. Conclusion

Clear, cogent, and convincing evidence supports the relevant challenged findings of fact except for Finding 31, and the findings of fact support the trial court's conclusion of law to terminate Mother's parental rights to Amy. Mother willfully leaving Amy in placement outside of the home for more than 12 months without showing that reasonable progress had been made in correcting the conditions which led to the removal of the juvenile supports this conclusion of law. Accordingly, the trial court's order terminating Mother's parental rights is affirmed.

AFFIRMED.

Judges TYSON and MURPHY concur.