653 S.E.2d 425 (2007)
In the Matter of S.W.
No. COA07-707.
Court of Appeals of North Carolina.
December 4, 2007.
Sharp, Michael, Outten & Graham L.L.P., by Steven D. Michael, Kitty Hawk, for petitioner-appellee Dare County Department of Social Services.
Parker Poe Adams & Bernstein LLP, by John J. Butler, Raleigh, for appellee Guardian ad Litem.
Betsy J. Wolfenden, Chapel Hill, for respondent-appellant mother.
Richard Croutharmel, Raleigh, for respondent-appellant father.
HUNTER, Judge.
Both parents of S.W. appeal from an order adjudicating him abused and neglected. After careful review, we affirm as to both parents.
S.W. was born in July 2006. On 11 November 2006, S.W. was brought to the Outer Banks Hospital by his parents ("respondents"). There he presented with a high fever and symptoms of chest congestion. Chest x-rays showed that four of S.W.'s ribs, three on one side and one on the other, had been fractured and were in the process of healing; all four injuries were at least three weeks and possibly as much as eight weeks old. The ribs on each side were at different stages in the healing process, suggesting that the injuries were sustained during two different incidents. The parents told the treating physician that they did not know how S.W. had received these injuries.
On 13 November 2006, Child Protective Services removed S.W. from his parents' care. Since that time, he has been in the care of three different foster families, during which time he has been treated several times by doctors for a virus common in infants and an ear infection, but has presented no bruises or injuries.
After conducting a two-day adjudication and disposition hearing, the court adjudicated S.W. abused and neglected on 28 February 2007. On 27 March 2007, the court reduced to writing its order that the Dare County Department of Social Services ("DSS") have legal custody over S.W. Both parents appeal from this order.
The adjudication of S.W. as abused and neglected is the first step in the termination of parental rights. In this stage, the burden is on the petitioner to provide "clear, cogent, and convincing evidence" that the *426 named grounds in N.C. Gen.Stat. § 7B-1111(a) (2005) exist. See In re C.C., J.C., 173 N.C.App. 375, 380, 618 S.E.2d 813, 817 (2005). Here, S.W. was adjudicated abused and neglected pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) through the two following conclusions of law:
3. S.W. is an abused child as defined in [N.C. Gen.Stat. § ] 7B-101 in that the juvenile's parents have inflicted or allowed to be inflicted on the juvenile a serious physical injury by other than accidental means and they created or allowed to be created a serious risk of serious physical injury to the juvenile by other than accidental means.
4. S.W. is a neglected child as defined in [N.C. Gen.Stat. § ] 7B-101 in that the child does not receive proper care from his parents and lives in an environment injurious to the child's welfare.
Both parents argue that (1) they did not inflict any of the injuries on the child, and so no abuse exists, and (2) they did not know the child needed medical care, so their failure to obtain it is not neglect. Both arguments are without merit.
Per N.C. Gen.Stat. § 7B-101(15) (2005), a juvenile "who is not provided necessary medical care" is a neglected juvenile. Here, S.W. was brought to the hospital at least three weeks after four of his ribs were broken. Respondent-father argues that if the parents were not aware that S.W. needed medical care, their failure to provide it did not constitute neglect. However, as the trial court found in yet another undisputed finding of fact, the rib fractures would have caused S.W. to cry when he was lifted or moved about. Given that his parents were his primary caretakers, even accepting their argument that they did not inflict the wounds at issue, they either failed to notice their baby's extensive injuries and pain, or noticed but ignored them. Either way, their failure to obtain medical attention for the child constitutes neglect per the statute.
Both parents argue that if S.W.'s discomfort was that obvious, other persons who interacted with him in the preceding six to eight weeks should also have noticed. During that time, S.W. attended two daycares: Candy's Daycare from 2 to 4 October 2006 and Cameron's Daycare from 9 October to 13 November 2006. As the medical expert testified, however, the fact that neither daycare did not report any such irritability is unsurprising, given that the fractures could have been as old as eight weeks, meaning they could easily predate S.W.'s attendance at daycare.
Both parents also specifically attempt to place blame on either or both of the daycares S.W. attended, arguing that S.W. might have been injured there. As the trial court found in an undisputed finding of fact, however, three formal, independent investigations conducted on both daycares by DSS, Nags Head Police Department, and Division of Child Development found them non-negligent and not responsible for any injury to S.W. Other than these daycares, S.W. was in the exclusive care and custody of his parents.
The parents further argue that since S.W. was not treated for his broken ribs even upon their discovery, it cannot be said that he required medical attention. Regardless of whether midway through the child's healing process no elaborate medical treatment was given, broken bones in a baby four months old are certainly a serious injury that need medical attention.
Even if S.W.'s injuries were sustained as the result of an accident while he was in someone else's care, respondent-parents' failure to obtain medical care for him when he had four broken ribs constitutes neglect. The fact that S.W.'s ribs had been broken for at least three weeks (and possibly as long as eight weeks) when he was first presented for medical care certainly shows that he lives in an environment injurious to his welfare. As such, the trial court's holding is affirmed.
Affirmed.
Judges McGEE and BRYANT concur.