IN THE MATTER OF: J.M.C., N.E.G.-V., E.J.G.-V., and C.R.G.-V.
No. COA09-494
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
Paul W. Freeman, Jr., for petitioner-appellee Wilkes County Department of Social Services.
David A. Perez, for respondent-appellant mother.
Tracie M. Jordan, for Guardian ad Litem.
STROUD, Judge.
Respondent-appellant appeals from order entered 18 February 2009 by Judge Jeanie R. Houston in District Court, Wilkes County terminating her parental rights to her four children. After careful review, we hold that the trial court's findings of fact do not support the grounds for termination. We therefore reverse the decision of the trial court.
Respondent-appellant has four children: eight-year-old J.M.C ("Jack"), six-year-old E.J.G.-V ("Eric"), five-year-old N.E.G.-V ("Nick"), and three-year-old C.R.G.-V ("Carl")[1]. Three of the four children have special needs. Carl, Nick, and Jack all have been diagnosed as having Attention Deficit Hyperactivity Disorder ("ADHD"). Carl also has had several seizures, has an auditory processing delay, and receives speech therapy. Nick too receives speech therapy. Jack, in addition to ADHD, has spina bifida. When Jack was originally taken into DSS custody, he was unable to walk and needed a wheelchair. His condition has since improved, but he still walks with braces and crutches and requires catheterization.
Respondent-appellant's four children have been in the custody and care of the Wilkes County Department of Social Services ("DSS") since 13 July 2007. DSS took custody of the children and placed them in foster care pursuant to four nonsecure custody orders in which the trial court found the children were exposed to "a substantial risk of physical injury or sexual abuse because the parent, guardian, custodian, or caretaker has created conditions likely to cause injury or abuse or has failed to provide, or is unable to provide adequate supervision or protection." Respondent-appellant voluntarily agreed to the children's placement in DSS custody. The four children are not in the same placement. Jack is in a separate placement to accommodate his condition; Nick and Eric are in a placement together; and Carl is in a separate placement.
On 17 July 2007, the four children were adjudicated dependent, based on an agreement between respondent-appellant and DSS. Around the same time, DSS initiated a Family Service Case Plan ("case plan") with respondent-appellant, but she made little to no progress during the remainder of 2007. Additionally, she did not visit with the children during this time.
The trial court conducted a permanency planning hearing on 10 December 2007 and entered an order on 16 January 2008, in which it changed the permanent plan from reunification to adoption. In the order, the trial court relieved DSS of any responsibility for further reunification efforts, concluding that "[a]ny further efforts to eliminate the need for placement of the children would be futile and contrary to the children's need for a safe, permanent home within a reasonable amount of time." However, the trial court did grant respondent-appellant two supervised visits per month with the children.
Subsequently, respondent-appellant began to make some progress on her case plan. She had two supervised visits with Eric, Nick and Carl in February 2008, which were arranged by Melody Stockwell ("Ms. Stockwell"), the DSS social worker assigned to her case at the time. Respondent-appellant testified that she requested visitation several times, but Ms. Stockwell delayed visitation and did not set up any visits until January 2008. Respondent-appellant did not have any visits with Jack. DSS apparently scheduled a visit with Jack around the holidays in late 2007, but respondent-appellant missed the visit. According to respondent-appellant, there was a misunderstanding regarding the visit. Based on a conversation with Ms. Stockwell, respondent-appellant was under the impression that the visit was scheduled for January.
Respondent-appellant had the two visits with three of her children, but visitation was ceased shortly thereafter. DSS stopped visitation in March 2008 due to inappropriate comments that respondent-appellant reportedly made to the children. The trial court held a review hearing on 9 June 2008, and in an order entered 1 July 2008, the trial court formally ceased visitation. The trial court found that respondent-appellant told the children that they were coming home on 9 June 2008, which upset the children. Further, the trial court found that the children's behaviors had deteriorated following visitation, but had improved after visitation was ceased. Respondent-appellant testified that she had not requested visitation since June 2008. Given the trial court's order, respondent-appellant was under the impression that she was not able to request visitation.
On 14 March 2008, DSS filed petitions to terminate respondent-appellant's parental rights to Jack, Eric, Nick, and Carl. DSS alleged the following grounds for termination: (1) neglect and (2) willful abandonment. DSS also sought to terminate the parental rights of the fathers.[2]
The trial court conducted a termination hearing on 8 January 2009. Ms. Stockwell did not testify. However, Mary Severt ("Ms. Severt"), the DSS social worker who took over the case in March 2008, offered testimony regarding respondent-appellant's case plan. According to Ms. Severt, the case plan required respondent-appellant to obtain stable employment, to obtain stable and appropriate housing, to complete parenting classes and to obtain a psychiatric evaluation. Although respondent-appellant made progress fulfilling on these requirements, it occurred after the filing of the petition. For instance, respondent-appellant completed her parenting classes and obtained her psychiatric evaluation in November 2008, had been employed since October 2008, and obtained housing in June 2008. Ms. Severt also testified that the housing was not appropriate. Ms. Severt believed that the bedrooms and bathroom were upstairs; therefore, the apartment could not accommodate Jack's disability. Additionally, Ms. Severt testified that, while respondent-appellant had maintained a job since October, she had been through approximately five other jobs in the calendar year. Ms. Severt further testified that respondent-appellant had not sent the children any cards or gifts and was not paying any support for the children. The children's foster parents and a DSS community support service technician also testified on behalf of DSS. Respondent-appellant testified in her own behalf, outlining the progress she had made on her case plan and her attempts to set up visitation with her children.
Following the hearing, the trial court entered an order on 18 February 2009 finding the existence of the grounds for termination alleged by DSS. At disposition, the trial court concluded that it was in the best interests of the children to terminate respondent-appellant's parental rights. Respondent-appellant gave timely notice of appeal from the orders. The court also terminated the parental rights of the biological father of Eric, Nick, and Carl, as well as parental rights of the purported fathers of Jack. None of the fathers appealed.
Proceedings to terminate parental rights are conducted in two parts: (1) the adjudication stage, governed by N.C. Gen. Stat. § 7B-1109, and (2) the disposition stage, governed by N.C. Gen. Stat. § 7B-1110. In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003). On appeal, respondent-appellant raises the following issues: (1) she challenges several adjudicatory findings of fact on the grounds that they are not supported by clear, cogent, and convincing evidence; (2) she contends that the trial court erred in concluding that the grounds of neglect and willful abandonment existed to terminate her parental rights to the children; and (3) she argues that the trial court abused its discretion in concluding that it was in the best interests of the children to terminate respondent-appellant's parental rights. However, as explained below, we need not address all of respondent-appellant's arguments, because we conclude that the trial court erred in concluding that DSS proved the existence of neglect and willful abandonment as grounds for termination.
Pursuant to N.C. Gen. Stat. § 7B-1111(a) (2007), a trial court may terminate parental rights upon a finding of one of the ten enumerated grounds. "In [the adjudication] stage, the burden is on the petitioner to provide `clear, cogent, and convincing evidence' that the named grounds in N.C. Gen. Stat. § 7B-1111(a) (2005) exist." In re S.W., 187 N.C. App. 505, 506, 653 S.E.2d 425, 425-26 (2007). On appeal, we review the trial court's orders to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur." In re Oghenekevebe, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395 (1996) (citation omitted).
The trial court concluded that termination of respondent-appellant's parental rights was justified based on the following grounds: (1) neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) willful abandonment pursuant to N.C. Gen. Stat. § 7B1-111(a)(7). Although the trial court found that two grounds exist, "[a] single ground . . . is sufficient to support an order terminating parental rights." In re J.M.W., 179 N.C. App. 788, 789, 635 S.E.2d 916, 917 (2006). Respondent-appellant challenges both grounds for termination, as well as several findings of fact. However, we need not address the majority of respondent-appellant's challenges to the findings of fact because the findings do not support the grounds for termination as a matter of law.
First, we turn to the ground of neglect. N.C. Gen. Stat. § 7B-1111 lists neglect as one of the grounds for terminating parental rights and provides, in pertinent part:
(a) The court may terminate the parental rights upon a finding of one or more of the following:
(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101.
N.C. Gen. Stat. § 7B-1111(a)(1) (2007). Neglect, in turn, is defined as follows:
Neglected juvenile.  A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007).
However, when a child has not been in the custody of a parent for a significant amount of time prior to the termination hearing, as is the case here, "the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Shermer, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citing In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002)). Because the determinative factor is the parent's ability to care for the child at the time of the hearing, we previously have explained that "requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id. (emphasis added) (citing In re Ballard, 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984)). Therefore, the trial court must "find that grounds for termination exist upon a showing of a `history of neglect by the parent and the probability of a repetition of neglect.'" In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting Shermer, 156 N.C. App. at 286, 576 S.E.2d at 407). "[E]vidence of neglect by a parent prior to losing custody of a childincluding an adjudication of such neglectis admissible in subsequent proceedings to terminate parental rights." Ballard, 311 N.C. at 715, 319 S.E.2d at 232. Additionally, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id.
Here, the trial court concluded that
[t]he Petitioner has shown by clear and convincing evidence that grounds exist for the termination of the parental rights of the Respondent-parents pursuant to G.S. § 7B-1111(a)(1), in that said children are neglected juveniles, as that term is defined by G.S. § 7B-101. In making this determination, the Court has considered any evidence of change of circumstances since the children were removed from their mother's home; and that the Court does not find any significant positive changes.
Although the trial court considered changed circumstance, noticeably absent from this conclusion is any finding regarding respondent-appellant's probability of repetition of neglect. Nor do the findings of fact mention any likelihood of repetition of neglect. Without such a finding, the trial court's conclusion is in error. See In re C.C., 173 N.C. App. 375, 382, 618 S.E.2d 813, 818 (2005) (concluding that the trial court erred where "no evidence was presented and no finding was made that a probability of repetition of neglect existed at the time of the termination hearing").
Moreover, the trial court's order does not contain any finding of prior neglect. Although the children were removed from respondent-appellant's custody, the trial court order contains no finding that the children were neglected by respondent-appellant while in her custody. We previously have found error where a trial court concluded that grounds exist under N.C. Gen. Stat. § 7B1-111(a)(1) without any evidence of prior neglect while the parent had custody of the juvenile in question. In re J.G.B., 177 N.C. App. 375, 382, 628 S.E.2d 450, 455-56 (2006). In J.G.B., the juvenile had been adjudicated dependent, but the adjudication occurred after the juvenile was removed from the parent's custody. Id. Because there was no other evidence of neglect prior to the juvenile's removal, we concluded that the evidence in J.G.B. was insufficient to establish prior neglect. Id.
Here, we are faced with a similar situation. In the instant case, none of the four children were previously adjudicated neglected. Although the children were adjudicated dependent, the adjudication occurred after they were removed from respondent-appellant's custody. Therefore, the prior adjudication is insufficient to establish prior neglect. See id. Additionally, the trial court's order does not contain any findings of fact regarding respondent-appellant's conduct or parenting prior to the children's removal on 13 July 2007, from which one could conclude that the children were indeed neglected. All of the trial court's findings of fact address respondent-appellant's conduct since the children were taken into DSS custody, which is insufficient to establish past neglect. See id. Accordingly, we hold that the trial court erred in concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(1) to terminate respondent-appellant's parental rights.
Next, we turn to the second ground for termination, willful abandonment. N.C. Gen. Stat. § 7B-1111 provides that the trial court may terminate parental rights upon a finding that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion. . . ." N.C. Gen. Stat. § 7B-1111(a)(7). Willful abandonment under this subsection "`implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.'" In re Young, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997) (quoting In re Adoption of Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986)). "It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). "The word `willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." Searle, 82 N.C. App. at 275, 346 S.E.2d at 514 (citations omitted).
Because DSS filed its petition to terminate respondent-appellant's parental rights on 14 March 2008, the relevant time period for considering whether she "abandoned" Jack, Nick, Eric, and Carl is 14 September 2007 to 14 March 2008. The trial court made the following findings of fact which address this ground during the relevant time period:
21. Visitation between the mother and [the] children was stopped in March, 2008. The visitation was stopped because one or more children became very upset and uncontrollable after visitation with the mother. These behaviors improved after the visits ceased.
. . . .
33. Although the mother had opportunities to visit with the children before March, 2008, she went from July, 2007 until February, 2008 and had no contact with the children. Indeed, since the children have been in foster [c]are, the mother has had two (2) visits with them, both in February, 2008. During these visits, the mother made inappropriate comments to one or more of the children telling them that they would be coming home in the near future.
. . . .
35. The mother has had no visits with [Jack] since [Jack] has been in [foster] care. A Christmas visit during 2007 was scheduled with the mother. However, this visit did not occur and the child became upset.
36. The mother has not sent any cards, letters, or other gifts to the children on a consistent basis.
37. The mother has paid no support for the children, although she has been physically and financially able to pay some amount to defray the cost of the children's care. She has offered no just cause or excuse for her failure to provide support.
With respect to finding number 33, the beginning portion of this finding is not supported by the evidence in the record. The beginning of this finding states that, "[a]lthough the mother had opportunities to visit with the children before March, 2008, she went from July, 2007 until February, 2008 and had no contact with the children." The only evidence presented at the termination hearing suggests that respondent-appellant actually made attempts to set up visitation, but DSS was responsible for the delay. Respondent-appellant testified that she made the requests for visitation to Ms. Stockwell, but Ms. Stockwell did not testify at the hearing. Thus, DSS did not offer any testimony to contradict respondent-appellant's testimony. Indeed, the social worker that testified was not even assigned to respondent-appellant until March 2008, at which point the relevant time period under N.C. Gen. Stat. § 7B-1111(a)(7) had passed. While Ms. Severt was able to testify, based on DSS records, that respondent-appellant had two visits with three of the children in February 2008, she offered no testimony to support the finding that respondent-appellant made no attempt to visit with the children prior to February 2008. Nor did she offer any other details regarding respondent-appellant's behavior during the relevant six month time period.
Therefore, we are left with evidence that respondent-appellant had two visits in February 2008 with three of her children, despite her previous efforts to schedule visitation. After the two visits, DSS ceased visitation. Although respondent-appellant's conduct at the visits purportedly led to the cessation of visitation, this conduct is not evidence that respondent-appellant "manifest[ed] a willful determination to forego all parental duties and relinquish all parental claims to the child." See Young, 346 N.C. at 251, 485 S.E.2d at 617. Indeed, her comments to the children are evidence the contrary, that she wanted the children back. Although respondent-appellant had certain failings, her actions do not rise to the level of willful abandonment, in light of her two visits, her attempts to schedule visits, and her attendance at all pertinent hearings in the matter. See Bost v. Van Nortwick, 117 N.C. App. 1, 19, 449 S.E.2d 911, 921 (1994) (finding no willful abandonment where parent visited the children at Christmas, attended three soccer games, and indicated that he wanted to arrange support payments for the children and regular visitation), appeal dismissed, 340 N.C. 109, 458 S.E.2d 183 (1995).
We further note that many of the trial court's findings of fact are not relevant to the willful abandonment ground. For instance, many of the findings of fact address respondent-appellant's behavior in the time period subsequent to the filing of the petition. Under the plain language of the statute, such evidence is not relevant to the determination of whether respondent-appellant willfully abandoned the children. See N.C. Gen. Stat. § 7B-1111(a)(7). Additionally, many of the findings of fact are focused on respondent-appellant's progress on her case plan. We have previously suggested that such findings are "not of great relevance for a determination of willful abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(7)" and are "more appropriately considered as a grounds for termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2)." In re S.R.G., ___ N.C. App. ___, ___, 671 S.E.2d 47, 52 (2009). Based on DSS's failure to call Ms. Stockwell as a witness and its misplaced emphasis on events occurring after March 2008, we find that DSS failed to present sufficient evidence corresponding to the statutory requirements for establishing willful abandonment.
In conclusion, we determine that the trial court's factual findings do not support its legal conclusions that grounds under N.C. Gen. Stat. § 7B-1111(a)(1) and (a)(7) existed to terminate respondent-appellant's parental rights. Although the record contains evidence which casts doubt on respondent-appellant's ability to parent, the trial court's findings of fact are not sufficient to support findings of neglect and willful abandonment. Accordingly, we reverse the order terminating respondent-appellant's parental rights. Because we have reversed the order on these grounds, we need not address respondent-appellant's challenge to the disposition order.
Reversed.
Judge STEPHENS and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] We will refer to the minor children J.M.C., E.J.G.-V., N.E.G.-V., and C.R.G.-V by pseudonyms, Jack, Eric, Nick and Carl, to protect the children's identities and for ease of reading.
[2] Respondent-appellant's estranged husband is the father of Eric, Nick, and Carl, but Jack has a different father. At the time the petitions were filed, Jack's paternity had not been conclusively established and the purported fathers' whereabouts were unknown. The fathers are not involved in this appeal.