IN THE MATTER OF: TAMMY RUTH MATHERLY

No. COA01-580

(Filed 19 March 2002)

**Termination of Parental Rights— findings—insufficient**

The trial court erred in a termination of parental rights order by not stating that its findings were made by clear, cogent and convincing evidence. Furthermore, the court's findings as to respondent's financial and employment abilities do not evidence an appropriate consideration of respondent's age, there was no finding that respondent was emancipated and legally competent to establish her own residency, and it was not apparent in the order that the issue of "willfulness" was adequately addressed.

Appeal by respondent from judgment entered 23 October 2000 by Judge Ernest J. Harviel in Alamance County District Court. Heard in the Court of Appeals 9 January 2002.

*Alamance County Guardian ad Litem Elisa A. Chinn-Gary for Petitioner-Appellee.*

*Walker & Bullard, by Daniel S. Bullard, for respondent-appellant.*

THOMAS, Judge.

Respondent, Lynette Matherly, appeals from an order entered by the trial court terminating her parental rights to Tammy Ruth Matherly. Because the trial court did not specify what standard it used in making findings of fact, and because those findings were insufficiently detailed as to respondent's willfulness and capability, we reverse and remand.

The facts are as follows: Respondent was fourteen years old when she gave birth to Tammy on 3 April 1997. Approximately fifteen months later, respondent, then living in Arizona, allowed Tammy to go on an extended trip with respondent's father and stepmother. The trip ended in a motel room in July 1998 when the Alamance County Department of Social Services (DSS) found Tammy and seven of respondent's siblings in a state of neglect. Respondent's stepmother, the only adult present in the motel room, was charged with eight counts of child abuse and jailed.

Tammy was immediately placed in the custody of DSS, and after a hearing on 3 and 4 November 1998, was adjudicated neglected and dependent. Among its findings, the trial court determined that Tammy had been improperly fed, suffered from head lice, and did not have a stable residence. The trial court also found that Tammy had been in the custody of her step-grandmother at the time of DSS's intervention, but the step-grandmother was in jail because of the child abuse charges. At disposition, the trial court ordered Tammy's custody to remain with DSS. Respondent was not present at either the adjudicatory or dispositional hearings.

In February 1999, respondent, who turned sixteen years old on 16 December 1998, moved to North Carolina and began working with DSS in an effort to reunify with Tammy. Her efforts were not long-lasting or consistent. Respondent set up an appointment with a therapist and began the sessions, but she stopped prior to being released. She began visits with Tammy, but often failed to keep the appointments. Respondent attended four parenting classes, but then failed to appear for two additional ones or for a second set that had been recommended by petitioner, the guardian *ad litem.*

On 1 March 2000, petitioner filed for the termination of respondent's and the putative father's parental rights. Respondent was seventeen years old and was appointed an attorney and guardian *ad litem.* The paternity of the father still had not been established, with service on him being accomplished by publication.

The petition alleges, *inter alia,* that: (1) respondent failed to attend eleven out of sixteen regularly scheduled visits with Tammy during 1999 and 2000; (2) respondent failed to advise her social worker of her whereabouts during a three-week period; (3) respondent failed to establish and maintain a stable residence; (4) respondent failed to comply with court directives concerning financial support; (5) respondent left Tammy in foster care or placement outside the home for more that twelve months without showing the court that she has made reasonable progress toward correcting the conditions that led to Tammy's removal; (6) respondent failed to obtain and maintain permanent employment; and (7) Tammy was born out of wedlock and has not been legitimated.

There is a two-step process in a termination of parental rights proceeding. *In re Montgomery,* 311 N.C. 101, 316 S.E.2d 246 (1984). In the adjudicatory stage, the trial court must find that at least one ground for the termination of parental rights listed in N.C. Gen. Stat.

§ 7B-1111 exists. N.C. Gen. Stat. § 7B-1109 (1999). The petitioner has the burden throughout the adjudicatory stage to prove by clear and convincing evidence that facts establishing the grounds for termination exist. *See* N.C. Gen. Stat. § 7B-1111(b). Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered. There, the court shall issue an order terminating the parental rights, unless it further determines that the best interests of the child require otherwise. N.C. Gen. Stat. § 7B-1110(a) (1999). *See also In re Blackburn*, 142 N.C. App. 607, 543 S.E.2d 906 (2001).

In the instant case, the termination grounds found by the trial court were: (1) that respondent had willfully left the child in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made to correct the conditions leading to the child's removal; (2) that respondent had willfully failed to pay a reasonable portion of the child's costs for a continuous period of six months preceding the petition, although respondent was physically and financially able to do so; (3) the child was born out of wedlock and the putative father had not judicially established paternity nor legitimated the child by marrying respondent or by providing support to the child or respondent; and (4) that respondent is incapable of providing proper care for the child and there is a reasonable probability that such incapacity will continue for the foreseeable future based on the mother's present circumstances. *See* N.C. Gen. Stat. §§ 7B-1111 (a) (2), (3), (5) and (6) (1999).

The trial court, however, did not state that the findings as to any of the grounds were made by "clear, cogent and convincing evidence." This Court has held that the trial court must recite the standard of proof in the adjudicatory order and that a failure to do so is error. *See In re Lambert-Stowers*, 146 N.C. App. 438, 552 S.E.2d 278 (2001); *In re Church*, 136 N.C. App. 654, 657, 525 S.E.2d 478, 480 (2000). We thus reverse and remand the matter to the trial court with instructions to determine whether the evidence in the adjudicatory hearing satisfies the required standard of proof.

Further, we note that the trial court's written findings as to respondent's financial and employment abilities do not evidence an appropriate consideration of respondent's age. She was fifteen years old when DSS first took custody of Tammy and was seventeen when

the petition to terminate her parental rights was filed. Throughout the trial court's involvement, respondent herself was a juvenile, an unemancipated minor, under N.C. Gen. Stat. § 7B- 101(14).

A careful evaluation of the facts by the trial court here is critical, particularly after this Court's opinion, affirmed by our Supreme Court, to hold grandparents responsible for the support of the off-spring of their minor child. *See Whitman v. Kiger*, 139 N.C. App. 44, 533 S.E.2d 807 (2000), *aff'd*, 353 N.C. 360, 543 S.E.2d 476 (2001). In *In re Ballard*, our Supreme Court held that a "finding that a parent has [the] ability to pay support is essential to termination for nonsupport on this ground." *In re Ballard*, 311 N.C. 708, 716-17, 319 S.E.2d 227, 233 (1984). Additionally, there was no finding that respondent was emancipated and legally competent to "establish" her own residency when respondent was only sixteen years old. DSS's "care plan" had included an objective that she do so.

Additionally, there must be a proper application of the words "willfully" in grounds (2) and (3) and "incapable" in ground (6) under N.C. Gen. Stat. § 7B-1111. This Court has had numerous occasions to consider the meaning of willfulness as used in statutes such as these. The word 'imports knowledge and a stubborn resistance . . . one does not willfully fail to do something which it is not in his power to do.' " *In re Moore*, 306 N.C. 394, 411, 293 S.E.2d 127, 137 (1982) (Carlton, J., dissenting) (citations omitted), *appeal dismissed*, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983). Evidence showing a parents' ability, or capacity to acquire the ability, to overcome factors which resulted in their children being placed in foster care must be apparent for willfulness to attach. *In re Wilkerson*, 57 N.C. App. 63, 291 S.E.2d 182 (1982). In the instant case, it is not apparent from the trial court's order that "willfulness" was adequately addressed.

The trial court must make specific findings of fact showing that a minor parent's age-related limitations as to willfulness have been adequately considered. *See generally*, N.C. Gen. Stat. § 7B-1110(b) (1999). Likewise, the juvenile court is under a duty to make findings as to whether a minor parent's inevitable move into adulthood is likely to cure what would otherwise form the basis of an incapability under section 7B-1111(a)(6).

Accordingly, we remand this issue as well to the trial court with instructions to make appropriate findings as to respondent's willfulness and capability consistent with this opinion. The trial court may take additional evidence in its discretion.

REVERSED AND REMANDED.

Judges WYNN and HUDSON concur.