IN THE MATTER OF: C.M.W.
No. COA09-295
Court of Appeals of North Carolina.
Filed: July 7, 2009.
Mercedes O. Chut, for petitioner-appellee Guilford County Department of Social Services.
Betsy J. Wolfenden, for respondent-appellant father.
MARTIN, Chief Judge.
Respondent-father appeals from an order terminating his parental rights to C.M.W. After careful review, we affirm.
On 11 August 2006, the Guilford County Department of Social Services ("DSS") filed a petition alleging that C.M.W. was a dependent juvenile. DSS alleged that both of C.M.W.'s parents were minors, and that the mother was in the custody of DSS. DSS stated that, "[d]ue to the children's [sic] age and vulnerability, the mother's current situation, the father's age and current situation, it would be contrary to the child's best interest to be released to the sole care of her mother or father." On 17 August 2006, DSS assumed custody of the child by non-secure custody order.
An adjudicatory hearing was held on 14 September 2006. At the time, C.M.W. was placed with her mother in the home of the mother's aunt. The trial court adjudicated C.M.W. a dependent juvenile as stipulated by the parties. The trial court granted legal and physical custody to DSS and ordered that respondent-father enter into a service agreement with DSS.
On 2 March 2007, DSS filed a motion seeking a review hearing. DSS alleged that on 18 February 2007, a "physical altercation" occurred between respondent-father's and mother's families following C.M.W.'s visitation with respondent-father. DSS further alleged that, after the altercation when the maternal relatives returned home, shots were fired into the maternal grandmother's home. DSS stated that charges had been filed in both incidents. DSS requested that the court review the matter "due to the inappropriateness and danger of the situation."
On 15 March 2007, the trial court held a review hearing pursuant to DSS's motion. The trial court made findings that:
7. Since the last court date, the parents, maternal and paternal grandmothers, and other members of both parties' family were involved in an altercation at the father and paternal grandmother's home. It is believed that the minor child [C.M.W.] was in the middle of much of the altercation. The paternal grandmother alleged that the minor child may have hit her head on the door jam while being tussled about during the fight. [C.M.W.] was examined the next day at High Point Pediatrics; no injuries were found or observed.
8. When the maternal relatives returned to the maternal grandmother's home after the altercation, three females confronted the family wielding a hammer, a household figurine, and a gun. When the maternal family and the minor child rushed into the residence, a gunshot was fired at the home, which traveled through the front wall, through the interior walls, and rested in the back wall of the residence. All this occurred while [C.M.W.] was present in the home.
The trial court also made detailed findings that neither parent complied with their case plan. Accordingly, the trial court determined that it was not in the juvenile's best interest to be returned to either parent's care, and ordered that custody remain with DSS.
On 13 February 2008, nunc pro tunc, 10 January 2008, the trial court entered another review order. The court noted that respondent-father did not appear at the review hearing because he was incarcerated on charges of assault with a deadly weapon with intent to kill inflicting serious injury and robbery with a dangerous weapon. The court again found that respondent-father was not in compliance with his case plan. The trial court changed the permanent plan for C.M.W. to a concurrent plan of adoption and reunification.
On 10 March 2008, DSS filed a petition to terminate respondent-father's parental rights. DSS alleged three grounds for termination: (1) that respondent-father had willfully left the juveniles in foster care for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting those conditions that led to the children's removal, pursuant to N.C.G.S. § 7B-1111(a)(2); (2) that respondent-father, for a continuous period of six months immediately preceding the filing of the petition, had failed to pay a reasonable portion of the cost of care for the juvenile, although physically and financially able to do so, pursuant to N.C.G.S. § 7B-1111(a)(3); and (3) that the child was born out of wedlock, and that respondent-father had failed to either establish paternity, legitimate the child, or provide substantial financial support or consistent care with respect to the child and the mother, pursuant to N.C.G.S. § 7B-1111(a)(5).
Hearings were held on the petition to terminate respondent-father's parental rights on 27 October 2008 and 3 November 2008. The trial court concluded that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-father's parental rights. The court further concluded that it was in C.M.W.'s best interest that respondent-father's parental rights be terminated. Accordingly, on 3 December 2008, nunc pro tunc, 3 November 2008, the trial court terminated respondent-father's parental rights. Respondent-father appeals.
Respondent-father's sole argument on appeal is that the trial court erred by finding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate his parental rights. After careful review, we affirm.
N.C.G.S. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000)).
In the case sub judice, the trial court concluded grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-father's parental rights. This Court has stated that:
[T]o find grounds to terminate a parent's rights under G.S. § 7B-1111(a)(2), the trial court must perform a two part analysis. The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.
In re O.C., 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (citations omitted), disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005).
Here, in support of its conclusion of law that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-father's parental rights, the trial court made multiple findings regarding respondent-father's failure to comply with his case plan. The trial court found that respondent-father: (1) never established a verifiable income, or produced any documentation to prove that he was employed; (2) did not pay any child support; (3) did not complete parenting classes; (4) failed to "[e]stablish clear communications" with the mother, or practice "shared-parenting" with the mother, due to the altercation between the respondent-father's and the mother's families on 18 February 2007; (5) did not remain drug free; and (6) did not obtain a high school diploma or GED. Respondent-father does not contest these findings on appeal. Therefore, the findings of fact are deemed to be supported by sufficient evidence, and are binding on appeal. See N.C.R. App. P. 28(b)(6); In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence").
Respondent-father notes that at the time of C.M.W.'s birth, he was an unemancipated minor. Accordingly, respondent-father cites In re Matherly, 149 N.C. App. 452, 455, 562 S.E.2d 15, 18 (2002), and argues that the trial court's findings were insufficient because it failed to make specific findings of fact showing that his age-related limitations as to willfulness had been adequately considered. We do not agree.
In Matherly, the respondent-mother's parental rights had been terminated by the trial court pursuant to N.C.G.S. § 7B-1111(a)(2). The mother had been only fourteen years old when she gave birth to the juvenile, fifteen years old when DSS first took custody of the juvenile, and seventeen years old when DSS filed the petition to terminate her parental rights. Therefore, as noted by this Court, "throughout the trial court's involvement, respondent herself was a juvenile, an unemancipated minor, under [N.C.G.S.] § 7B-101(14)." Matherly, 149 N.C. App. at 454-55, 562 S.E.2d at 17 (emphasis added). This Court stated that
there must be a proper application of the words "willfully" in grounds (2) and (3) and "incapable" in ground (6) under N.C. Gen. Stat. § 7B-1111. This Court has had numerous occasions to consider the meaning of willfulness as used in statutes such as these. The word `imports knowledge and a stubborn resistance . . . one does not willfully fail to do something which it is not in his power to do.'" Evidence showing a parents' ability, or capacity to acquire the ability, to overcome factors which resulted in their children being placed in foster care must be apparent for willfulness to attach.
Id. at 455, 562 S.E.2d at 17 (citations omitted). The Court stated that "the trial court's written findings as to respondent's financial and employment abilities do not evidence an appropriate consideration of respondent's age." Id. This Court thus concluded that it was "not apparent from the trial court's order that `willfulness' was adequately addressed." Id. at 455, 562 S.E.2d at 18. Accordingly, this Court remanded with instructions that "[t]he trial court must make specific findings of fact showing that a minor parent's age-related limitations as to willfulness have been adequately considered." Id.
In In re J.G.B., 177 N.C. App. 375, 628 S.E.2d 450 (2006), we reversed an order terminating a respondent-mother's parental rights, and remanded the matter to the trial court for findings as to whether the respondent-mother's leaving of her child in foster care for the statutory twelve-month period was willful, "given respondent's age." Id. at 384, 628 S.E.2d at 457. The mother had entered into two case plans prior to her eighteenth birthday. The first case plan required the mother to: "(1) provide appropriate supervision and a safe environment for J.G.B., (2) learn additional parenting skills, and (3) ensure J.G.B.'s medical needs were appropriately met." Id. at 377, 628 S.E.2d at 453. The second case plan required the mother to: "(1) provide and maintain appropriate medical care for J.G.B. and (2) be able to support herself and J.G.B. financially." Id. The mother was eighteen years old for just under four months when DSS filed the petition to terminate her parental rights, and she had been physically separated from J.G.B. for just under four months. Relying on Matherly, this Court concluded that "the trial court failed to adequately address respondent's age, in terms of whether respondent willfully left J.G.B. in foster care for twelve months prior to the filing of the petition." J.G.B., 177 N.C. App. at 384, 628 S.E.2d at 456-57.
In the instant case, on 7 December 2006, the court released respondent-father's guardian ad litem due to respondent-father having reached the age of majority. Therefore, unlike the respondents in Matherly and J.G.B., respondent-father was no longer a minor when he entered into his case plans. Additionally, DSS filed the petition to terminate his parental rights approximately one-and-a-half years after his eighteenth birthday. Moreover, whereas the age of the respondents in Matherly and J.G.B. may have affected their ability to comply with their case plans, such as the requirements that they obtain stable residences, or provide financial support, respondent-father's age had no bearing here on his failure to refrain from drug use. Thus, we conclude that Matherly and J.G.B. are distinguishable, and furthermore, that the requirement that a trial court make specific findings of fact showing that age-related limitations as to willfulness had been adequately considered, is inapplicable here. Therefore, we hold that the trial court's uncontested findings of fact support its conclusion that grounds existed to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2). Accordingly, we affirm.
Affirmed.
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).