An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-196

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:                  Mecklenburg County
                               Nos. 09 JT 304
                                     10 JT 449
S.H.                             12 JT 647
J.H.
S.B.
Minor children

Appeal by respondents from order entered 25 November 2013 by Judge Elizabeth T. Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 11 June 2014.

> *Twyla Hollingsworth-Richardson for petitioner-appellee Mecklenburg County Department of Social Services, Division of Youth and Family Services.*
>
> *Ryan McKaig for respondent-appellant mother.*
>
> *Peter Wood for respondent-appellant father.*
>
> *Administrative Office of the Courts, by Deana K. Fleming, Associate Counsel, for guardian ad litem.*

DAVIS, Judge.

Respondent-mother D.H and Respondent-father X.B. (collectively "Respondents") appeal from an order terminating

their parental rights to their children "Sam," "John," and "Sean."[1]  After careful review, we affirm.

## Factual Background

On 7 May 2009, the Mecklenburg County Department of Social Services, Youth and Family Services ("YFS") filed a petition alleging that Sam was a neglected and dependent juvenile.  At the time YFS filed the petition, Respondent-mother was fifteen years old and in placement herself with YFS.  The petition alleged that Respondent-mother (1) went "AWOL" from her YFS placement by repeatedly running away on 4 February 2009, 31 March 2009, and 4 April 2009; (2) was taken to Gaston County Detention Center on 1 May 2009 on a secure custody order; (3) had failed to attend school; (4) was engaged in a sexual relationship with a man more than five years older than herself; and (5) had named two seventeen-year-old males as possible fathers of Sam.  The petition further stated that Sam's maternal grandmother was unsuitable for placement and alleged that Respondent-mother was a "truant, a runaway and is undisciplined and, therefore, unsuitable for being placed with her child in the same foster home."  A non-secure custody order was entered

---

[1] The pseudonyms "Sam," "John," and "Sean," are used throughout this opinion to protect the identity of the children and for ease of reading.  N.C.R. App. P. 3.1(b).

granting YFS custody of Sam. On 12 June 2009, Sam was adjudicated neglected and dependent.

On 26 July 2010, YFS filed a petition alleging that John — Respondents' second child — was a neglected and dependent juvenile. John had been born two days prior to the filing of the petition relating to Sam. The petition alleged that (1) Respondent-mother was 16 years old and in "YFS's custody herself"; (2) Respondent-mother was unable to name the father of John; (3) there were no family members who were ready, willing, and able to take care of John and the only place he could live was with Respondent-mother in her foster home; (4) John was "neglected because he has been abandoned by his father"; and (5) John was "dependent because he is in need of placement and assistance and has no parent, custodian, or guardian willing or able to provide placement assistance." YFS obtained nonsecure custody of John, and on 13 September 2010, he was adjudicated a dependent juvenile.

In October 2010, Respondent-mother revealed to her school nurse that (1) Respondent-father was the father of Sam and John; (2) she remained in a relationship with him; (3) he was violent towards her; and (4) he was "aware of the location of her placement with her children." As a result, Respondent-mother

and her two children were moved to another foster home. An *ex parte* protective order was entered against Respondent-father, and Respondent-mother was ultimately granted a one-year restraining order against him.

On 5 January 2011, YFS filed a new petition alleging that Sam and John were neglected and dependent juveniles and that Respondent-father "has not cooperated with [Respondent-mother's] requests that he participate in paternity testing." On 16 February 2011, a paternity order was entered establishing Respondent-father as the father of both Sam and John. On 7 June 2011, Respondent-father was ordered to pay child support.

On 7 October 2012, Respondent-mother gave birth to another child, Sean, and on 12 October 2012, YFS filed a petition alleging that Sean was a neglected and dependent juvenile. In the petition, YFS alleged that (1) Respondent-mother "failed to make reasonable progress at the Court's last review hearing . . . and the father has never made any progress" with regard to providing for Sam and John; (2) "the Court couldn't trust anything the mother said . . . [and] that the mother was no closer to securing employment, securing housing or being able to provide a safe home for her children"; (3) Respondent-mother had violated the court's directives by maintaining her relationship

with Respondent-father, which led to her ultimately becoming pregnant; (4) "based on the mother's recent decisions, she has either given up or is giving the court the middle finger"; (5) Respondent-mother was "moving backwards for six months" with regard to breaking the cycle of domestic violence; (6) Respondent-mother "still [did] not have independent housing or any means of support . . . [and] continue[d] to make poor decisions in having another child for whom she cannot provide a safe home"; and (7) Respondent-father failed to provide "substantial support or consistent care to [Respondent-mother] during her pregnancy" or "the love, care, and personal contact that inheres in the parental relationship to this or his other children." Sean was adjudicated neglected on 3 December 2012.

Following a review hearing held on 20 February 2013, the trial court suspended reunification efforts and changed the permanent plan for the juveniles to adoption. On 17 April 2013, YFS filed a petition to terminate Respondents' parental rights, alleging that grounds for termination existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), and (7). The petition further alleged that grounds also existed to terminate Respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(5).

On 25 November 2013, the trial court entered an order terminating Respondents' parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (3). Respondents gave timely notice of appeal.

**Analysis**

Respondents' sole argument on appeal is that the trial court abused its discretion when it determined that the termination of Respondents' parental rights was in the best interests of the children. We disagree.

At a hearing to terminate parental rights, the trial court must first determine if a statutory ground for termination exists. *In re E.M.*, 202 N.C. App. 761, 763-64, 692 S.E.2d 629, 630 (2010). "After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). When determining whether it is in the best interests of a child to have parental rights terminated, the trial court must consider:

    (1)  The age of the juvenile.

    (2)  The likelihood of adoption of the juvenile.

    (3)  Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* This statute further requires the trial court to "make written findings regarding the [criteria] that are relevant." *Id.* The trial court's determination as to whether termination of parental rights is in the juvenile's best interests is reviewed under an abuse of discretion standard. *In re Shermer*, 156 N.C. App. 281, 285, 576 S.E.2d 403, 407 (2003).

Here, in support of its conclusion that it was in the juveniles' best interests to terminate Respondents' parental rights, the trial court made the following pertinent findings of fact:

> 1. . . . [Sam] was born on 4 May 2009 in Mecklenburg County, North Carolina. [John] was born on 23 July 2010 in Mecklenburg County, North Carolina. [Sean] was born in Mecklenburg County, North Carolina on 7 October 2012.
>
> . . . .
>
> 50. The juveniles are very bonded to their mother, especially the older boys, and they know who she is. The children and the mother have a reciprocal relationship.

51. The respondent mother is unable to demonstrate that she can provide for their basic needs and for their social and emotional development. There is no viable opportunity for the development of the juveniles with the respondent mother.

52. The juveniles are familiar with [Respondent-father]. The Court cannot assess the quality of the relationship between [Respondent-father] and the children as he has not presented for any court-authorized visitation.

. . . .

54. The children are developing a strong bond with their foster parents who are committed to adopting the children.

55. It is in the best interests of the juveniles to have a safe, stable and permanent home.

56. There are no known appropriate relatives available to provide permanence for the juveniles.

Respondents do not challenge any of the above-quoted findings of fact. Therefore, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

**I. Respondent-mother**

Respondent-mother argues that the trial court abused its discretion in determining that termination was in the juveniles' best interests "in light of the fact that she had made significant progress, expressed a desire to make further

progress and to be a good mother to the children, and had formed a strong, loving bond with the children, who, as the trial court noted, deeply love their mother." We disagree.

It is the trial "judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences drawn therefrom." *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). "It is not the function of this Court to reweigh the evidence on appeal." *Garrett v. Burris*, ___ N.C. App. ___, ___, 735 S.E.2d 414, 418 (2012), *aff'd per curiam*, 366 N.C. 551, 742 S.E.2d 803 (2013).

Here, after considering the competent evidence, the trial court found as fact following the termination hearing that Respondent-mother could not provide for the juveniles' social and emotional development and that the juveniles were bonded with their foster parents who were committed to adopting them. The trial court also made findings regarding the bond between the juveniles and the parents, the likelihood of adoption, and whether the termination of parental rights would aid in the accomplishment of a permanent plan for the juveniles. The trial court also made findings relating to the age of each juvenile. It is apparent from both the order and the accompanying record

that the trial court considered each of the statutory criteria listed in N.C. Gen. Stat. § 7B-1110(a). Thus, the trial court's conclusion reflects a reasoned decision based upon those statutory factors. As such, the trial court did not abuse its discretion in determining that it would be in the best interests of Sam, John, and Sean to terminate Respondent-mother's parental rights.

Respondent-mother next contends that the trial court may have erroneously believed it was required to terminate her parental rights based on its statement that the court had "no choice" but to do so. We are not persuaded. The full statement made by the trial court at the disposition hearing was as follows:

> [Respondent-mother], you, I think, on some level never, you know, trusted any of the people that were involved with you and your children. You've been dishonest at various points throughout this case and you created a situation that -- it's just sad and tragic because I -- I do feel that you have left the Court with *no choice* but to find that the Department has proven grounds to terminate your parental rights on the ground of neglect, willfully leaving the children in foster care for 12 months without having done anything to alleviate the conditions that brought them into custody. And -- and the Department's certainly proven grounds to terminate for failure to contribute, financially, during the six month[s]

immediately proceeding [sic] the filing of the petition.

When viewed in context, it is clear that the trial court was simply expressing its conclusion that Respondent-mother's actions had left the trial court with no viable option other than terminating her parental rights as opposed to the trial court laboring under a misapprehension of law that it lacked discretion to decide otherwise. This fact is further supported by the trial court's later statement that it was in the "best interest of each juvenile" to terminate Respondents' parental rights. Therefore, this argument is overruled.

## II. Respondent-father

We similarly conclude that findings 1, 52, 54, 55, and 56 establish that the trial court did not abuse its discretion in determining that the termination of Respondent-father's parental rights was in the best interests of the children. In his brief, Respondent-father challenges the following findings of fact made by the trial court:

38. By his own testimony (the father) admitted that he has had resources through his family or through his own employment to provide for the juveniles, but has failed to provide his relatives or any support for the juveniles.

39. [Respondent-father] has willfully withheld his care and affection in a

consistent manner from the juveniles for their entire lives despite knowing that they were in YFS custody.

. . . .

43. [Respondent-father] has been employed gainfully since 7 September 2011. He has provided clothes and shoes to the children on occasion without the Court's knowledge. But despite court orders to pay child support for the juveniles, he has made no payments in support of the juveniles.

. . . .

45. [Respondent-father] completed an online eight-hour domestic violence class in June, 2013. The certificate provide[d] for the class falsely certifies completion of certain components of domestic violence concepts that [Respondent-father] testified that he was unaware of and was unable to articulate what the conditions, patterns of behavior or how [the] course assisted him in ameliorating domestic violence.

. . . .

47. The respondent parents have failed to ameliorate the issues of domestic violence or to acknowledge the impact of domestic violence on the children.

. . . .

53. [Respondent-father] has failed to acknowledge the conditions and impact of domestic violence. He has failed in every way to place himself in a position to provide permanence for his children with him or his family despite the opportunity. He has left the children in foster care since their births.

These findings are not related to the court's conclusion that termination of his parental rights was in the children's best interests. Instead, these findings relate to the trial court's conclusion that Respondent-father neglected his children pursuant to N.C. Gen. Stat. § 7B-1111(a)(1); willfully left his children in foster care for 12 months without making reasonable progress towards correcting those conditions which led to the removal of the juveniles pursuant to N.C. Gen. Stat. § 7B-1111(a)(2); and willfully failed to pay a reasonable portion of the cost of care for the juveniles pursuant to N.C. Gen. Stat. § 7B-1111(a)(3). Respondent-father does not dispute the fact that "the trial court properly found grounds to terminate his parental rights." Therefore, we need not address the challenged findings as they do not relate to the sole issue he has raised in this appeal – whether the trial court erred in finding that the termination of his parental rights was in the best interests of the children.

Respondent-father cites *In Re Matherly*, 149 N.C. App. 452, 562 S.E.2d 15 (2002), for the proposition that the trial court abused its discretion when it failed to properly take into account his age and maturity, claiming that he is "little more than a child himself." We disagree.

In *Matherly*, this Court held that a "trial court must make specific findings of fact showing that a minor parent's age-related limitations as to willfulness have been adequately considered" when determining whether grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) to terminate parental rights. *Id.* at 455, 562 S.E.2d at 18. However, as noted above, Respondent-father does not challenge the trial court's determination that grounds existed to terminate his parental rights. Moreover, we note that the parent in *Matherly* was 17 years old, and thus a minor, when the petition to terminate her parental rights was filed. *Id.* at 454-55, 562 S.E.2d at 17. In this case, conversely, Respondent-father was 26 years old at the time of the filing of the petition to terminate his parental rights. Thus, *Matherly* is inapplicable.

After careful review of the trial court's findings and the entire record, we hold that the trial court's conclusion that it was in the best interests of the juveniles to terminate Respondents' parental rights was not manifestly unsupported by reason. Therefore, the trial court did not abuse its discretion. *See In re S.C.R.*, 198 N.C. App. 525, 536, 679 S.E.2d 905, 912 (2009) (holding that trial court's findings reflected reasoned decision based upon statutory factors listed

in N.C. Gen. Stat. § 7B–1110(a) and that, therefore, trial court did not abuse its discretion in determining termination of parent's parental rights was in best interests of child).

## Conclusion

For the reasons stated above, the trial court's order is affirmed.

AFFIRMED.

Judges CALABRIA and STROUD concur.

Report per Rule 30(e).