An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-511

NORTH CAROLINA COURT OF APPEALS

Filed:  21 October 2014

IN THE MATTER OF:

J.K.U.                                      Guilford County
                                            No. 12 JT 168


Appeal by respondent mother from order entered 24 January 2014 by Judge Angela Foster in Guilford County District Court. Heard in the Court of Appeals 29 September 2014.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*
>
> *Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham-Hinch, for guardian ad litem.*
>
> *Richard Croutharmel for respondent-appellant mother.*

McCULLOUGH, Judge.

Respondent mother appeals from the trial court's order terminating her parental rights to the minor child, J.K.U. ("Jack")[1].  For the reasons discussed herein, we affirm the trial court's order.

## I. Background

---

[1]A pseudonym is used for ease of reading and to protect the privacy of the juvenile.

On 3 November 2011, Guilford County Department of Social Services ("DSS") received a neglect report alleging inappropriate supervision, possible lack of care, and inappropriate sexual contact between 11-year-old Jack and his younger female cousin. On 4 November 2011, DSS conducted an initial investigation of the allegations and the family denied any inappropriate contact between the children. The children's mothers entered into a safety agreement to provide appropriate supervision at all times and to cooperate with DSS.

On 26 January 2012, DSS received another report alleging inappropriate sexual contact between Jack and his cousin. Jack's cousin stated that Jack "touched her private parts" and that "it hurt." Jack was interviewed by a police detective and admitted that he engaged in some sexual behavior with his cousin. Based on Jack's statements to the detective, Jack and respondent were provided temporary housing at a motel. Detailed safety agreements were made with the children's mothers indicating there was to be no contact between the children. On 6 February 2012, DSS learned that the children had contact in violation of the safety agreements.

On 8 February 2012, DSS filed a juvenile petition alleging Jack was neglected and dependent and the trial court entered an

order placing Jack in nonsecure custody with DSS. Respondent entered into a case plan on 1 March 2012 and agreed to the following conditions: (1) complete a parenting assessment and follow the recommendations, complete parenting classes, attend scheduled visits, and maintain contact with the social worker; (2) complete a substance abuse assessment and follow recommendations, and submit to random drug screens; (3) obtain and maintain stable housing; (4) obtain a psychiatric evaluation to determine if medication is needed, comply with individual therapy, and comply with joint family therapy once recommended by the child's therapist; and (5) obtain and maintain stable employment. By order entered 27 April 2012, Jack was adjudicated dependent. The trial court ordered that custody of Jack remain with DSS. Respondent was ordered to comply with her case plan and cooperate with DSS.

The matter came on for a permanency planning hearing on 24 October 2012. By order filed 14 November 2012, the trial court found respondent "has the ability to work the objectives in her case plan when she decides to do so." The permanent plan for the case was reunification with a concurrent plan of adoption. The trial court concluded it was in Jack's best interest to remain in the custody of DSS.

Following a subsequent permanency planning hearing held on 26 April 2013, the trial court found respondent was not engaged in her case plan. Specifically, respondent continued to test positive for marijuana and was not participating in drug treatment, she did not have safe and secure housing or income, she was not participating in individual therapy on a consistent basis, and she had not completed positive parenting classes. As a result, the trial court changed the permanent plan to adoption with a concurrent plan of reunification and ordered DSS to proceed with filing a termination of parental rights petition.

On 24 June 2013, DSS filed a petition to terminate parental rights alleging grounds existed to terminate respondent's parental rights based upon neglect, failure to make reasonable progress, failure to pay a reasonable portion of the cost of care, and dependency. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), and (6) (2013). The termination hearing was held on 26 November 2013, after which the trial court found the existence of all grounds alleged by DSS. The court determined that termination of respondent's parental rights was in Jack's best interest and entered an order terminating respondent's parental rights. Respondent appeals.

## II. Discussion

Respondent argues the trial court reversibly erred in finding and concluding that grounds existed to terminate her parental rights because the evidence failed to support the findings and the findings failed to support the conclusions. "The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984).

We note that although the trial court concluded that more than one ground existed to terminate respondent's parental rights, we find it dispositive that the evidence supports termination of her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3), willful failure to pay a reasonable portion of the cost of care. *See In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) ("A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination.").

A trial court may terminate parental rights where:

> The juvenile has been placed in the custody of a county department of social services, . . . or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period

> to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C. Gen. Stat. § 7B-1111(a)(3).

This Court as recognized that the use of "willfully" in the statute "imports knowledge and a stubborn resistance[.]" *In re Matherly*, 149 N.C. App. 452, 455, 562 S.E.2d 15, 18 (2002) (quotation marks omitted). "Manifestly, one does not act willfully in failing to make support payments if it has not been within [her] power to do so." *In re Adoption of Maynor*, 38 N.C. App. 724, 726, 248 S.E.2d 875, 877 (1978). "A parent's ability to pay is the controlling characteristic of what is a 'reasonable portion' of cost of foster care for the child which the parent must pay." *In re Clark*, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981). "A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." *Id*. "[N]onpayment would constitute a failure to pay a 'reasonable portion' if and only if respondent were able to pay some amount greater than zero." *In re Bradley*, 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982).

Here, respondent argues there is no finding that respondent was able to pay some amount greater than zero. Respondent

contends the trial court reversibly erred in failing to specifically address respondent's ability to pay. We disagree.

The trial court found that "[t]he mother is under an order to pay child support for the juvenile but has failed to pay any child support or otherwise contribute to the juvenile's cost of care since he has been in custody." The trial court further found that during the relevant six month period respondent "willfully failed to pay a reasonable portion of the juvenile's cost of care under the circumstances despite having been physically and financially able to do so." These findings are supported by the evidence as the social worker testified that respondent entered into a voluntary support order to pay $50 per month effective 1 January 2013, and respondent never paid any child support. The social worker further testified that respondent "is an able body and is under no physical or mental disability to prevent her from working[.]"

Respondent's ability to pay was established by her child support order.

> Because a proper decree for child support will be based on the supporting parent's ability to pay as well as the child's needs, there is no requirement that petitioner independently prove or that the termination order find as fact respondent's ability to pay support during the relevant statutory time period.

*In re Roberson*, 97 N.C. App. 277, 281, 387 S.E.2d 668, 670 (1990) (citations omitted). Accordingly, the trial court's findings establish that respondent had the ability to pay some amount greater than zero. The trial court did not err in finding grounds exist to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3).

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). The court must consider the following factors and make written findings regarding those that are relevant:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are 'manifestly unsupported by reason.'" *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (quoting *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).

In this case, respondent concedes that the trial court made findings concerning the enumerated factors, but contends the trial court failed to address the fact that Jack was of an age that his consent to adoption was necessary. Respondent argues the trial court abused its discretion in terminating her parental rights because the evidence showed that Jack had a strong bond with her, wanted to return to her custody, and was unlikely to consent to adoption. We are not persuaded.

In this case, the trial court found that "[Jack] has a strong bond with his mother[.]" However, the trial court also found that "[Jack] deserves permanency." Jack's guardian ad litem testified that Jack had expressed to her that he was tired of the case "dragging out." She further testified that he was frustrated by "being in limbo." Although Jack expressed a desire to return to his mother, he also wanted permanence and

stability. Moreover, the Juvenile Code does not require that termination of parental rights lead to adoption in order for it to be in the child's best interest. *See In re M.M.*, 200 N.C. App. 248, 258, 684 S.E.2d 463, 470 (2009) (stating there's no requirement within N.C.G.S. § 7B-1110 that termination lead to adoption), *disc. review denied*, 364 N.C. 241, 698 S.E.2d 401 (2010).

Here, the trial court properly considered the section 7B-1110(a) factors and made written findings as required. The trial court did not abuse its discretion in determining that termination of respondent's parental rights was in Jack's best interest. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

Affirmed.

Judges CALABRIA and STEELMAN concur.

Report per Rule 30(e).