ELMORE, Judge.
Respondent-father appeals from adjudication and disposition orders terminating his parental rights to his son, Sam.[1] Because the trial court failed to make findings as to the willfulness of respondent-father's conduct as required to support each ground it concluded existed to support terminating his parental rights, we vacate the orders and remand for further findings.
I. Background
On 18 October 2013, the Hoke County Department of Social Services ("DSS") filed a juvenile petition alleging that Sam was dependent. That same day, DSS obtained nonsecure custody of Sam. On 22 November 2013, DSS filed an amended juvenile petition alleging that Sam was neglected and dependent. The amended petition alleged that from July 2013 until October 2013, Sam's mother,[2] respondent-father, and Sam moved twenty times. On 17 October 2013, the family was found in an abandoned house without money or other means to provide adequate housing for Sam. The petition also contained allegations of domestic violence between the parents and alcohol use.
Following a hearing held on 6 December 2013, the trial court entered an order on 28 March 2014 adjudicating Sam dependent and neglected. The trial court found that Sam's mother and respondent-father stipulated that Sam was a neglected and dependent juvenile and concluded that a factual basis for the allegations contained in the amended petition existed. The trial court entered a disposition order on 28 March 2014, continuing Sam in the custody of DSS and placing Sam in the home of his paternal great-aunt and great-uncle. The plan of care for Sam was set as reunification with both parents. Respondent-father was granted weekly visitation and ordered to comply with his Out of Home Family Services Agreement ("OHFSA"). This agreement included following the recommendations from his psychological evaluation, participating in substance abuse counseling, obtaining stable housing, obtaining verified employment, and taking parenting classes.
By the ninety-day review hearing held on 7 March 2014, respondent-father had completed a parenting class and substance abuse program. However, the trial court found that respondent-father still needed to obtain stable employment, housing, and transportation, and to comply with his OHFSA.
Following a permanency planning hearing held on 14 November 2014, the trial court entered an order on 7 January 2015 finding that respondent-father had yet to obtain stable employment or housing. Sam's kinship placement was continued and DSS was relieved of reunification efforts. Sam's permanent plan of care was changed to custody with a relative, concurrent with adoption.
By the 19 June 2015 permanency planning hearing, Sam had been removed from his kinship placement and placed in a foster home. The trial court found that respondent-father had moved to New York and had failed to visit Sam since March 2015. The court ordered DSS to pursue an Interstate Compact on the Placement of Children ("ICPC") home study on respondent-father in New York. New York denied the home study "in large part due to the father's unstable living conditions." Respondent-father contacted the Cortland County Department of Social Services ("Cortland DSS") regarding his ICPC and provided four separate addresses. Subsequently, respondent-father informed Cortland DSS that he was homeless.
After a permanency planning hearing held on 18 December 2015, the trial court found that while respondent-father had visited Sam four times since 19 June 2015, there were concerns that respondent-father had "used a substance due to glazed over and blood shot eyes and erratic behavior" at one of the visitations. Sam was placed with his paternal aunt and uncle in a kinship placement.
On 13 May 2016, respondent-father executed a "Relinquishment of Minor for Adoption by Parent or Guardian or Guardian Ad Litem of the Mother/Father." At a 17 June 2016 permanency planning hearing, the trial court found that respondent-father had not made any progress toward his OHFSA and changed Sam's permanent plan of care to adoption, concurrent with a secondary plan of custody with a relative.
On 3 August 2016, Sam was removed from his kinship placement due to behavioral issues and placed in a foster home. On 8 August 2016, respondent-father revoked his relinquishment of Sam.
On 17 March 2017, DSS filed a petition to terminate respondent-father's parental rights. On 14 June 2017, DSS filed an amended petition to terminate respondent-father's parental rights. DSS sought to terminate respondent-father's parental rights on the following grounds: neglect, failure to make reasonable progress, failure to pay for the cost of care, incapability, and abandonment. See N.C. Gen. Stat. §§ 7B-1111(a)(1)-(3), (6)-(7) (2017).
Following a hearing on 16 June 2017, the trial court entered an "Order on Adjudication of Termination of Parental Rights" and an "Order on Disposition of Termination of Parental Rights" on 18 July 2017. The trial court terminated respondent-father's parental rights "pursuant to N.C.G.S. §§ 7B-1111(a)(2), (a)(3), (a)(7)." On 16 August 2017, respondent-father filed notice of appeal from the order terminating his parental rights ("TPR Order").
II. Analysis
On appeal, respondent-father requests we reverse the TPR Order because the trial court erred by (1) issuing unsubstantiated and contradictory factual findings, and (2) failing to make the requisite finding of "willfulness" for each of the three grounds it concluded existed under N.C. Gen. Stat. § 7B-1111(a) to terminate his parental rights. Because we agree that the trial court erred by failing to make the requisite findings of willfulness for each ground, we vacate the TPR Order and remand with instructions for the trial court to issue additional findings.
A. Review Standard
"The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." In re Clark , 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984) (citation omitted). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re S.C.R. , 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (citation and internal quotation marks omitted), appeal dismissed , 363 N.C. 654, 686 S.E.2d 676 (2009). Unchallenged factual findings "are conclusive on appeal and binding on this Court." Id. at 532, 679 S.E.2d at 909 (citation omitted). "The trial court's conclusions of law are reviewable de novo on appeal." In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006) (citation and internal quotation marks omitted).
B. Challenges to Factual Findings
To support its conclusion that grounds existed to terminate respondent-father's parental rights, the trial court issued the following pertinent factual findings:
16. [Sam] has been in the custody and care of [DSS] for 1,369 days.
....
22. [Respondent-father] has not maintained stable housing, employment, and has failed to make consistent and sufficient efforts to have [Sam] returned to his custody.
....
25. [Respondent-father] was initially eager to participate in services provided by [DSS]. He completed parenting classes and substance abuse. However, once [Sam] was placed in a kinship home, [respondent-father's] involvement and visitations decreased.
....
27. [DSS] was informed by [respondent-father] that he is residing in [Cortland] County, New York. On June 19, 2015, the Court ordered [DSS] to pursue an [ICPC] on the address provided by [respondent-father] through the [Cortland DSS].
28. On October 15, 2015, [Cortland] DSS indicated [respondent-father] had provided [Cortland] DSS on October 6, 2015 and October 7, 2015 with four (4) separate addresses, but later informed [Cortland] DSS that he was homeless.
29. Placement of [Sam] with [respondent-father] was not possible in New York.
30. [Respondent-father] did not obtain housing until May 2017. After May 2017, [respondent-father] purportedly obtain[ed] housing with his current significant other ... in Fayetteville, North Carolina, with her two (2) children under the age of eighteen (18).
31. Prior to May[ ] 2017, [respondent-father] provided [DSS] with a fictitious lease.
32. [DSS] inquired as to the lease with the landlord and the Fayetteville Metropolitan Housing Authority ("FMHA"). FMHA informed [DSS] that the lease presented by [respondent-father] was fictitious and provided [DSS] with the true lease which did not reflect [respondent-father] as a tenant.
....
34. [Respondent-father] was unlawfully residing at [his significant other's address] without permission or authorization from FMHA.
35. Prior to [respondent-father] residing with [his significant other], [DSS] was unaware of [respondent-father's] residence and could not obtain such information due to [respondent-father's] refusal to provide [DSS] with such information.
....
44. [Respondent-father] has not demonstrated to [DSS] that he maintained stable housing.
....
49. [Respondent-father's] child support payments have been sporadic. A lump sum payment was made in October 2016 which was not volunteered by [respondent-father]. As of March 2017, wage withholding was in place.
....
65. On January 6, 2015, an order was filed for [respondent-father] to begin child support beginning October 1, 2014 of [sic] in the amount of $187.00 plus $15.00 for arrears.
66. As of June 15, 2015, child support arrears were $3,606.51 as to [respondent-father].
67. [Respondent-father] made no payments from October 1, 2014 through April 1, 2015 and September 1, 2015 through February 1, 2017.
68. [Respondent-father] has reported employment with [sic] from November 15, 2015 to February 1, 2016 but made no child support payments during that time.
69. From July 6, 2015 to August 14, 2015, [respondent-father] made six (6) child support payment[s] through wage garnishment.
70. On May 29, 2015, [respondent-father] made one (1) child support payment.
71. In June 2015, [respondent-father] made three (3) child support payments.
72. On October 1, 2016, child support payment was involuntarily paid by [respondent-father] in the amount of $1,321.00
73. [Respondent-father] is employed by Butterball, LLC as of October 1, 2016 to present.
74. On March 7, 2017, child support payments were received from Butterball, LLC through wage garnishment. [Respondent-father's] wages and payments continue in the amount of $187.00 plus $9.00 toward arrearage.
75. [Respondent-father] only began to make child support payments due to wage withholding and on prior occasions ... [respondent-father] was employed but failed to make child support payments.
76. [Respondent-father] made little or no efforts to remove, improve, or correct the conditions that caused [Sam] to be removed from [his] custody and place[d] in the custody of [DSS].
77. [Respondent-father] only recently attempted to correct the issues and conditions that [led] to the removal of [Sam].
Respondent-father first argues that "[s]everal of the trial court's findings of fact are contradicted by the evidence and by each other." We address each challenge to the trial court's findings of fact ("FOF") in turn.
First, respondent-father challenges FOF no. 22, in which the trial court found that he had "not maintained stable housing, employment, and has failed to make consistent and sufficient efforts to have [Sam] returned to his custody." Respondent-father argues that there was evidence he maintained stable housing for thirty-five days prior to the termination hearing, he maintained stable employment since 1 October 2016, and he made consistent efforts to have Sam returned to his custody. After carefully reviewing the record evidence, we conclude that FOF no. 22 is supported by clear, cogent, and convincing evidence.
Unchallenged FOF nos. 28, 30-35, and 44 establish that respondent-father failed to demonstrate to DSS that he had maintained stable housing. He deceived DSS by providing false addresses and a fictitious lease, and he refused to provide DSS with information regarding his residence at certain times. The record evidence also establishes that respondent-father maintained a transient lifestyle, living with multiple friends and family members, unlawfully living with his girlfriend, and being homeless. As to employment, although the trial court found in FOF no. 73 that respondent-father was employed from 1 October 2016 until the 6 June 2017 termination hearing, unchallenged FOF no. 26 states that he was unable to provide proof of employment prior to October 2016. Last, unchallenged FOF no. 25 establishes that although respondent-father was initially eager to participate in the DSS services that attempted to reunify him with Sam, once Sam was placed in a kinship home in 2014, his "involvement and visitation decreased."
Second, respondent-father challenges FOF no. 48, in which the trial court found that respondent-father "was ordered to pay child support. The Court took judicial notice of See Hoke County District Court File 14 CVD 502." Respondent-father argues that the trial court never took judicial notice of Hoke County District Court File 14 CVD 502. However, the record reveals that the trial court reviewed the file and considered the history of the case, as evidenced by unchallenged FOF no. 64 that states "[c]hild support was established October 1, 2014 in Hoke County File Number 14 CVD 502[.]" See In re M.N.C. , 176 N.C. App. 114, 120-21, 625 S.E.2d 627, 632 (2006) (noting that a trial court may take judicial notice of earlier proceedings in the same cause and holding that it is not necessary for the file to be entered into evidence).
Third, respondent-father challenges FOF nos. 52 and 66, which provide:
52. In the 6 months prior to the filing of the Petition to Terminate Parental Rights, the child support wage withholding commenced against [respondent-father] in March 2017. [Respondent-father] is currently in arrears in the amount of $3,606.51 as of June 2015.
....
66. As of June 15, 2015, child support arrears were $3,606.51 as to [respondent-father].
Respondent-father is correct that he was $3,606.51 in child support arrears as of 15 June 2017, not 2015. A Hoke County child support agent testified that respondent-father was in child support arrears in the amount of "$3606.51 as of 06/15/2017." However, this argument is irrelevant because it constitutes a mere typographical error in light of the trial court's finding that respondent-father was "currently in arrears ...." See In re J.K.P. , 238 N.C. App. 334, 343, 767 S.E.2d 119, 124 (" 'Clerical mistakes' are typographical errors, mistakes in writing or copying something into the record, or other, similar mistakes that are not changes in the court's reasoning or determination." (citation omitted) ), disc. rev. denied , 368 N.C. 250, 771 S.E.2d 314 (2014).
Fourth, respondent-father challenges FOF no. 67 as not supported by the evidence and contradictory to FOF no. 72:
67. [Respondent-father] made no payments from October 1, 2014 through April 1, 2015 and September 1, 2015 through February 1, 2017.
....
72. On October 1, 2016, child support payment was involuntarily paid by [respondent-father] in the amount of $1,321.00.
We agree with respondent-father to the extent that these findings contradict each other. However, testimony at the termination hearing indicates that respondent-father made no voluntary payments from 1 October 2014 through 1 April 2015 and from 1 September 2015 through 1 February 2017. Testimony also establishes that on 10 October 2016, a child support payment of $1,320.00 was received from respondent-father through wage garnishment.
Fifth, respondent-father challenges FOF no. 76, in which the trial court found that respondent-father had "made little or no efforts to remove, improve, or correct the conditions that caused [Sam] to be removed from [his] custody and place[d] in the custody of [DSS]." Respondent-father argues "little or no efforts" is a mischaracterization because he completed parenting and substance abuse classes, held a job for eight months prior to the termination hearing, and obtained his own housing before the termination hearing. However, the record evidence and unchallenged factual findings indicate that DSS obtained custody of Sam on 18 October 2013 and was involved with respondent-father for over three years. Although respondent-father was offered an array of services in an attempt for reunification, his involvement and visitations decreased once Sam was placed in a kinship home in 2014. He failed to fully comply with the OHFSA, failed to maintain stable housing, and did not report employment until October 2016. Furthermore, respondent-father was sporadic in his child support payments and visitation with Sam.
Although there was evidence that respondent-father completed parenting and substance abuse classes by the time of the ninety-day review hearing on 7 March 2014, the determination of whether respondent-father's conduct amounted to "little or no effort" from the time Sam was removed from his custody was within the trial court's discretion. See In re Oghenekevebe , 123 N.C. App. 434, 440-41, 473 S.E.2d 393, 398-99 (1996) ("All of the findings of fact regarding respondent's ... willingness to reunite herself with her child, are left to the trial judge's discretion.").
Finally, respondent-father challenges FOF no. 77, in which the trial court found that respondent-father "only recently attempted to correct the issues and conditions that lead to the removal of [Sam]." Respondent-father argues that "only recently" mischaracterized his efforts. We disagree. As set out above, although DSS had been involved with respondent-father and Sam since 18 October 2013, at the time of the 6 June 2017 termination hearing, respondent-father failed to obtain stable housing and had only held a job for the eight months prior to the hearing. The evidence supports this finding and it was well within the trial court's discretion to make this reasonable inference. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) ("[W]hen a trial judge sits as 'both judge and juror,' ... it is that judge's duty to weigh and consider all competent evidence, ... the weight to be given [witness] testimony and the reasonable inferences to be drawn therefrom." (citation omitted) ).
C. Challenges to Grounds for Termination
Respondent-father next argues that the trial court erred by concluding grounds existed to terminate his parental rights under N.C. Gen. Stat. §§ 7B-1111(a)(2), (3), and (7) because it failed to make factual findings addressing the issue of willfulness. We agree.
Under N.C. Gen. Stat. § 7B-1111(a)(2), a trial court may terminate parental rights "upon a finding" that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. §§ 7B-1111(a), (a)(2) (2017) (emphasis added). In this context, "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." In re McMillon , 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, disc. rev. denied , 354 N.C. 218, 554 S.E.2d 341 (2001). This Court has reversed a termination order based on N.C. Gen. Stat. § 7B-1111(a)(2) grounds where the trial court failed to make adequate findings as to whether a parent acted willfully or made reasonable progress. See In re C.C. , 173 N.C. App. 375, 383-84, 618 S.E.2d 813, 819 (2005) (reversing termination order based on N.C. Gen. Stat. § 7B-111(a)(2) grounds where it contained inadequate factual findings that the respondent acted "willfully" and was "devoid of any finding that respondent was 'unwilling to make the effort' to make reasonable progress in remedying the situation that led to the adjudication of neglect" (quoting McMillon , 143 N.C. App. at 410, 546 S.E.2d at 175 ) ).
Under N.C. Gen. Stat. § 7B-1111(a)(3), a trial court may terminate parental rights "upon a finding" that:
The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
N.C. Gen. Stat. §§ 7B-1111(a), (a)(3) (2017) (emphasis added). In this context, the word "willful" "imports knowledge and a stubborn resistance [.]" In re Matherly , 149 N.C. App. 452, 455, 562 S.E.2d 15, 18 (2002) (citation omitted). "Manifestly, one does not act willfully in failing to make support payments if it has not been within his power to do so." In re Adoption of Maynor , 38 N.C. App. 724, 726, 248 S.E.2d 875, 877 (1978) (citation omitted). This Court has reversed a termination order based in part on N.C. Gen. Stat. §§ 7B-1111(a)(2) and (3) where the trial court failed to make specific factual findings showing that it considered, and thus "adequately addressed," a parent's willfulness as to these grounds and remanded with instructions to "make appropriate findings as to [the parent's] willfulness ...." In re Matherly , 149 N.C. App. at 455, 562 S.E.2d at 18 ("[T]here must be a proper application of the words 'willfully' in grounds (2) and (3)[.]").
Under N.C. Gen. Stat. § 7B-1111(a)(7), a trial court may terminate parental rights "upon a finding" that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. §§ 7B-1111(a), (a)(7) (2017) (emphasis added). In this context, "[t]he word 'willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." In re Adoption of Searle , 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation omitted). This Court has held that "[i]n the absence of a finding of willfulness, the trial court's order does not establish grounds for termination [under N.C. Gen. Stat. § 7B-1111(a)(7) ]." In re T.M.H. , 186 N.C. App. 451, 455, 652 S.E.2d 1, 3 (vacating a termination order and remanding "with instructions to make appropriate findings as to the willfulness of [the parent's] conduct"), disc. rev. denied , 362 N.C. 87, 657 S.E.2d 31 (2007).
Here, the trial court failed to make any findings as to whether respondent-father acted willfully in (1) leaving Sam in placement outside the home without making reasonable progress, (2) failing to pay a reasonable portion of the cost of care, or (3) abandoning Sam. Absent findings regarding respondent-father's "willfulness," a required element of all three grounds, the trial court's order fails to establish grounds to terminate respondent-father's parental rights under N.C. Gen. Stat. §§ 7B-1111(a)(2), (3), or (7).
Accordingly, we "vacate the order[s] and remand the matter to the trial court with instructions to make appropriate findings as to the willfulness of [respondent-father's] conduct and then, if appropriate, to articulate conclusions of law that include the grounds under N.C.G.S. § 7B-1111(a) which form the basis for termination." T.M.H. , 186 N.C. App. at 456, 652 S.E.2d at 3. The trial court may, in its discretion, receive additional evidence on remand. See Heath v. Heath , 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999) (citation omitted).
III. Conclusion
Because the trial court failed to make any findings addressing the requisite "willfulness" of respondent-father's conduct with respect to each ground it concluded existed to terminate his parental rights, we vacate the 18 July 2017 orders and remand the case for further proceedings consistent with this opinion.
VACATED AND REMANDED.
Report per Rule 30(e).
Judges HUNTER, JR. and ZACHARY concur.

A pseudonym is used to protect the minor's identity.

Sam's mother is not a party to this appeal.